# THE STATE v. ARTHUR GREEN, Appellant.

### Division Two, June 30, 1910.

1. **INFORMATION: Verification: Waiver: Offer of Evidence.** The statute permits a verification of the information by the prosecuting attorney upon his information and belief, and defendant waives the point that it was verified by the prosecuting attorney only, and not upon the affidavit of any witness, by failing to challenge it by a motion to quash. Such an objection cannot be made for the first time at the time the State offers to introduce testimony.

2. **EVIDENCE: Statements of Defendant Under Arrest.** Voluntary statements made by defendant at the time of his arrest are competent testimony, although he was not advised he was under arrest, and although they were made in answer to questionings by the officer.

3. ————: **Reputation.** To ask a witness if defendant is not "a hard-working, industrious, honest colored boy" is not the proper way to prove his reputation for peace and quietude.

4. ————: ————: **Turbulence: Individual Cases.** It is not error to refuse to permit defendant, even on cross-examination of the State's witnesses, to show individual cases of turbulence and fighting on the part of deceased.

5. ————: **Good Behavior Since Arrest.** Where there is no question of flight in the case, it is not error to refuse to permit the sheriff to state defendant had given no trouble since his arrest or while confined in jail.

6. ————: **Defendant as Witness: Cross-Examination.** Where defendant has testified that he shot and killed deceased in self-defense, it is not error to permit the prosecuting attorney to ask him on cross-examination if he "shot to kill" or "intentionally shot deceased."

7. ————: **Scattering Shot: Experiments.** To exclude the result of experiments made with the gun with which deceased was shot and with shells taken from the same box, where there is no evidence that the shells contained the same amount of lead and powder as the one used when deceased was shot, is not to do defendant a substantial wrong, where the purpose is to approximate defendant's distance from deceased by the scattering of the shot, and where the witness is permitted to testify that the greater the distance from deceased the more the shot would scatter, etc.

State v. Green.

8. **MURDER: Instruction.** Where defendant was convicted of murder of the second degree, an instruction on murder of the first degree is not for review.

9. ———: ———: **Weighing Testimony.** It is not error to refuse an instruction asked by defendant in regard to the weight to be given to his own testimony, if the court has already given a correct instruction on the subject for the State.

10. ———: ———: **No Testimony.** It is not error to refuse an instruction on any subject where there is no evidence to support it.

11. **INFORMATION: Preliminary Hearing.** It is not necessary that the information in a murder trial show upon its face that a preliminary examination was accorded to defendant; and there is no merit in a contention that the prosecuting attorney had no authority to file the information, where the record before the justice of the peace shows that he expressly waived a preliminary hearing.

12. **REMARKS OF COUNSEL: No Exceptions.** Unless exceptions were saved to the action of the court in regard to the remarks of the State's counsel complained of, that action is not for review on appeal.

13. **EXCLUSION OF REGULAR PANEL: Remarks of Judge.** A remark by the trial judge, in excluding the regular panel, directing them not to remain in the court room during the progress of the trial, and assigning as a reason therefor that there was another case on the docket to be tried next, in the trial of which some of the evidence offered in this case would be introduced, could have had no bearing on the trial, and the court was clearly acting within its jurisdiction and line of duty.

14. **JUROR: Prejudice Against Negro Race.** The fact that a juror on a certain occasion refused to take a drink at the same counter of a saloon at which a negro was drinking, and a personal difficulty with the negro followed such refusal, did not show such prejudice against the negro race as disqualified him from serving as a juror in the trial of another negro for murder of a fellow negro.

15. **QUESTION FOR JURY: Murder in Second Degree.** Where from the evidence defendant was guilty of murder in the second degree or entitled to an acquittal on the ground of self-defense, the issue, there being no error in the instruction or the admission of evidence, is for the jury, and their verdict will not be disturbed by the Supreme Court.

Appeal from Montgomery Circuit Court.—*Hon. James D. Barnett,* Judge.

State v. Green.

AFFIRMED.

*Elliott W. Major,* Attorney-General, *Chas. G. Revelle* and *John M. Dawson,* Assistant Attorneys-General, for the State.

(1) The information is valid, sufficient in form and substance, and no objection is made to it in this court, nor was there any objection made to its sufficiency in the trial court. State v. Wilson, 172 Mo. 420; State v. Long, 209 Mo. 366; State v. Burnett, 203 Mo. 640; Kelley's Criminal Law, sec. 474. Defendant objected to the introduction of any evidence for the reason that the information was not properly verified. This objection was properly overruled. R. S. 1899, sec. 2477; State v. Temple, 194 Mo. 237. (2) Exceptions were taken to the witness Lorton testifying as to what appellant said at the time of his arrest. This was competent evidence, and a proper ruling on evidence by the trial court. Underhill on Criminal Ev., secs. 129, 163. (3) Counsel for appellant undertook to prove by cross-examination of witnesses Mollie Grant, widow of deceased, and Harriet Windsor, that deceased was a turbulent and quarrelsome man; that Mollie Grant had had him arrested and convicted for assault, etc. This the trial court refused to permit and appellant saved his exceptions thereto. The court ruled properly, as these were specific acts of violence of the deceased against third persons, and are incompetent. Franklin v. State, 29 Ala. 14; Underhill on Criminal Ev., sec. 325; Thomas v. People, 67 N. Y. 218. Had counsel inquired as to the general reputation of the deceased for being a turbulent and quarrelsome man, it would then have been error for the court to have sustained the objection. State v. Zahn, 202 Mo. 29. (4) It is not essential that the information show upon its face that the appellant had been accorded a preliminary examination. Ex parte Buckley, 215 Mo. 93; State v. Jeffries, 210 Mo. 302. Upon the motion for

new trial appellant introduced the record of the justice of the peace, showing absolutely that the appellant waived the preliminary examination. This was a privilege that appellant could waive. Ex parte McLaughlin, 210 Mo. 657; State v. McKee, 212 Mo. 138. Section 2457, R. S. 1899, and the Act of 1905, must be read and considered together. State v. Jeffries, 210 Mo. 302. (5) The weight of the evidence was for the consideration of the jury, and where there is substantial evidence to support the verdict, this court will not interfere. State v. Matthews, 202 Mo. 147; State v. Williams, 199 Mo. 137.

GANTT, P. J.—On the 30th of November, 1908, the prosecuting attorney of Montgomery county filed in the office of the clerk of said county an information, duly verified, charging the defendant with the crime of murder in the first degree in having on the 19th day of November, 1908, shot and killed one Willard Grant. Both the deceased and the defendant were negroes. The defendant being in custody, having been committed by the justice of the peace upon his waiver of a preliminary examination, was duly arraigned at the regular November term, 1908, of the said court, and thereupon the cause was continued to the May term, 1909, to enable the defendant to prepare for trial. At the May term, 1909, the defendant was put upon his trial before a jury, and was found guilty of murder in the second degree, and his punishment assessed at a term of thirty-five years in the State penitentiary.

The evidence on the part of the State tended to prove that the defendant was a negro man about twenty-four years of age, and the deceased, Willard Grant, was also a negro man, married and living in Montgomery City at the time of the homicide. On the night of November 19, 1908, there was a dance at the house of the deceased and a number of negroes were present, among them the defendant Arthur

Green, his brother Wesley Green, Wes Windsor and his wife and her daughter Mary or Mamie Howell. The house of the deceased consisted of three rooms, the kitchen and an east and west room. On the evening of the dance, in the kitchen of the said house, there was a keg of beer. The deceased, during the evening, was busy, most of the time, drawing the beer from the keg and delivering it to the guests by the drink. About ten o'clock that evening, the Windsor woman had observed Wesley Green and her daughter, Mary Howell, out in the yard, and upon Wesley returning to the house she accused him of having taken advantage of her in his relations with her daughter, and a quarrel ensued in which the other women present joined the Windsor woman in the attack upon Wesley Green, and there was considerable disturbance on account of the loud noise occasioned by the talking, threatening and quarreling. The deceased was at that time still in the kitchen with Wes Windsor, and it appears that Windsor heard some one say that his wife's throat was cut, and he immediately went into the room where Wesley Green and the women were having their disturbance. As he went in, Windsor raised a chair for the purpose of striking Green, and at this juncture the deceased, Willard Grant, came in from the kitchen and commanded peace, and then went out of the house.

The evidence tends to show that while this attack was being made upon his brother Wesley, the defendant, Arthur Green, left the house and went across the street to his own home and procured a single-barrel shotgun and some shells and started back towards the house of the deceased. By this time the guests had dispersed from the house in different directions. The testimony discloses that as the defendant returned toward the house of the deceased, he met the deceased in the road or street at a point about fifty-eight feet east of the gate in front of the deceased's house and there shot him with a single-barrel shotgun, making a wound

an inch in diameter three inches below the axilla of the left arm, the shot entering the left lung cavity over the heart and some of them passing to the center of the body.

The evidence also tended to prove that a pick belonging to the deceased was found on the ground about fifty-eight feet east of the front gate of the deceased's yard, and that bloody spots were observed on the ground and on the fence leading from and beyond seventeen feet west of where the pick was found to the front porch of the deceased's house, where he was found dead a few minutes after the shot was fired. Several witnesses identified the defendant as the person who fired the fatal shot, and one of the witnesses testified that as the deceased came back down the street or road he said, "Where is the black s— of a b— at, I will get him," and soon after fired the shot which killed the deceased. These witnesses also testified that at the time the deceased was shot, he had nothing in his hands, no weapon of any kind, and was making no demonstration towards the defendant.

On the part of the defendant the evidence tended to show that his general reputation for peace and quietude in that community was good, and there was some evidence to the contrary. His testimony tended to show that he attended the dance on the night of November 19, 1908, at the home of the deceased, and was one of the musicians on that occasion; that upon his brother becoming involved in the difficulty with the Windsor woman, he thought his brother was in danger of being seriously injured and thereupon he immediately went out of the house across the street and to his own home, calling to his brother Wes to come on and go home; that he procured the shotgun and some shells, loaded the gun and started back towards the house of the deceased; that he stopped and called for his brother Wes, and while standing there he heard someone running towards him and suddenly dis-

covered the deceased approaching him with a pick in his hands and raised up in a threatening and angry manner as if to strike the defendant, and that defendant, to save his own life, shot the deceased in self-defense.

Defendant also offered evidence tending to show that the wound upon the deceased consisted of one wound an inch in diameter and that the defendant was in close proximity to the deceased at the time he fired the fatal shot, and in support of his contention that the deceased was very close to him when he shot him he offered experimental evidence as to the distances within which the shot would scatter and those in which they would not scatter.

Defendant also offered testimony tending to show that deceased was intoxicated at the time of the killing, and bore a bad reputation in the neighborhood in which he resided for peace and quietude when he was intoxicated, and that the deceased was a person six feet and six inches in height and weighed from two hundred pounds to two hundred and forty pounds, and was a man of great strength.

The defendant testified in his own behalf that he was twenty-four years of age and had lived in Montgomery county all of his life, and at the time of the killing was living with his mother in Montgomery City; that he had known the deceased six years and their relations were friendly and they had never had any trouble; that the last time he saw the deceased was that night before the killing, deceased was drunk; that when defendant left the house of the deceased, his brother Wesley was threatened, that the women had all run into the room where his brother was and were assailing him, and that Wes Windsor came through the door with a chair trying to get at his brother to hit him and thereupon, he, the defendant, went out of the door; that before going, he saw his brother was overpowered, and he went home to get a gun to defend

him.  He got his gun and started back and saw Buster Anderson and Lucy Murphy, two of the young negroes who had attended the dance, and asked them for his brother.  At that time he was in the middle of the road in front of the deceased's house.  When he called the second time for his brother he was informed that the latter had gone over towards the blacksmith's shop, and defendant stood there looking to see if he could see his brother, and while standing there with his gun in his hand he heard a heavy running behind him and turned and saw the deceased Willard Grant with his pick thrown back to strike him, and to save his own life, he shot and killed him.    That the deceased was so close to him at the time he fired that he could not put the gun to his shoulder; that he fired without taking aim.  On cross-examination he testified that at the time the women were attacking his brother in the dance room, he did not see any of them have any weapons.    There was also evidence tending to show that the defendant's clothing was torn at the time he was arrested that night.  The gun with which the killing was done was found in an alley nearby that night.

At the close of the evidence the court instructed the jury on murder in the first degree and second degree and on self-defense, the competency of the defendant as a witness in his own behalf and on the credibility of witnesses generally, the presumption of innocence and reasonable doubt.  In behalf of the defendant the court gave an additional instruction on self-defense and modified a number of other instructions requested, all of which will be considered as occasion may require in the course of the opinion. Within four days after the rendition of the verdict of guilty, the defendant filed his motion for new trial, which was heard and overruled, and also his motion in arrest of judgment, which was heard and overruled. And the defendant was then sentenced in accordance

with the verdict of the jury and from that judgment he has appealed to this court. Upon the call of this case upon the docket counsel waived oral argument and by permission of the court leave was given the defendant to file a brief within ten days and the same time was given the Attorney-General to file a reply to the defendant. The defendant has not availed himself of the privilege of submitting the case on brief, but the Attorney-General has filed his brief in the cause.

I. The information is sufficient in form and substance, and is such as has often met the approval of this court, and no objection has been made to it in this court, nor was there any made to it in the circuit court. The defendant was duly arraigned and entered his plea of not guilty. The jury was duly and regularly impaneled and sworn to try the cause.

II. The Attorney-General with much industry has called attention to all the exceptions to the rulings of the court on the admissibility and objection to testimony. The first of these objections was to the introduction of any testimony, because the information was verified by the prosecuting attorney only, and not upon the affidavit of any witness. In State v. Temple, 194 Mo. 241, a like objection was made, but it was there ruled that our statute permits a verification of an information by the prosecuting attorney upon his information and belief and that the defendant waived this point by failing to challenge the information by motion to quash. That such an objection could not be made for the first time to the introduction of testimony. [State v. Brown, 181 Mo. l. c. 226.] The objection was properly overruled.

Mr. Lorton, a witness for the State, was asked as to certain statements made by defendant at the time of his arrest in explanation of the absence of his hat and the torn condition of his clothing, and defendant's

counsel objected for the reason that defendant was under arrest and he was not advised he was charged with murder. There is no pretense that he was threatened or had been offered immunity. Prima facie his statement was voluntary and the fact that it was obtained by the questioning of the officers, did not render it inadmissible or incompetent. [Underhill on Evidence, sec. 91; State v. Patterson, 73 Mo. l. c. 702, 705.]

The objection by the State to the question propounded to W. W. Hammack, if defendant was "a hard-working, industrious, honest colored boy," was properly sustained. This was not the proper way to prove defendant's general reputation for peace and quietude nor good character.

There was no merit in the objection to the testimony of the sheriff, Mr. Ernest, as to the finding of the pick and the marking of the place by digging a hole. The witness was perfectly competent to testify as to the place where it was found.

The objections to the questions asked of Mr. Ernest in regard to statements made by defendant to the prosecuting attorney after his arrest were properly overruled, on the same ground as already noted in regard to Mr. Lorton's evidence.

No error occurred in refusing to permit the sheriff to state defendant had given no trouble since his arrest. It was immaterial. There was no suggestion of flight in the case.

There are various other exceptions grouped together by the Attorney-General that are so clearly without merit that we do not feel called upon to reproduce them, especially as counsel have not thought them important enough to attempt to sustain them in a brief in this case. We have read the record carefully in each of these instances and have no doubt whatever of the propriety of the court's ruling in each of them.

When the widow of the deceased, Mollie Grant, was on the stand, counsel for the defendant on his cross-examination of her inquired of her, if on a certain occasion in 1899 the deceased did not run her out of her house and beat and abuse her daughter, and if she did not make a complaint against him for that assault. To this the State objected for the reason that it only went to prove a specific act of violence against a third party and it was incompetent to prove that the deceased was a turbulent and quarrelsome man, in this manner. A like question was propounded to her in regard to an assault upon one Addie Bundy on a certain occasion and the court sustained the same objection thereto for the same reason. The court permitted the defendant to interrogate this witness as to his general disposition as a quarrelsome man when under the influence of liquor. We think unquestionably the general reputation of the deceased as to being of a rash, turbulent disposition, in view of the defense interposed, to-wit, that of self-defense, was entirely proper, but we also think that the circuit court was right in refusing to permit the defendant to select individual cases of assault, even on cross-examination, to show this turbulent disposition. [Franklin v. State, 29 Ala. l. c. 19; People v. Thomas, 67 N. Y. 218; State v. Zorn, 202 Mo. l. c. 29.]

Numerous other exceptions appear in the record to the admission and exclusion of testimony, but we discover no error in the ruling of the court thereon, for the reason that the exceptions were either so unimportant, or so clearly groundless, or the evidence elicited or excluded was so utterly harmless in view of the whole record, that no reversible error was committed by the court in that respect.

An objection which was relied upon by the defendant's counsel with apparent earnestness and sincerity was made to a question asked by the prosecuting attorney of the defendant while he was on the

stand, and after he had testified that he shot and killed the deceased in self-defense, "if he shot to kill" or "intentionally shot the deceased," and the defendant answered that he shot to save his own life. We think there can be no doubt whatever that this was proper cross-examination and there was no error in permitting the question and in overruling the objection.

Considerable time was occupied in the examination of Mr. Ball as an expert in regard to his experiments with a single-barrel shotgun in shooting at objects with certain shells taken from a box of shells from which the defendant testified he had taken the shell with which he loaded his gun with which he killed the deceased. The court refused to permit the witness to testify to his experimental or demonstrative evidence for the reason that no evidence was produced to the court showing that the shell used in the experiment contained the same amount of lead and powder that was in the shell that the defendant used when he shot the deceased, but permitted the witness to testify as an expert as to the distance a gun of the size, quality and gauge of the gun used by defendant would scatter shot, and permitted him to testify as to what distance this kind of a gun would scatter the shot in a given distance from the muzzle of the gun to the object struck. The witness testified that the scattering of the shot would be the same with a twelve-gauge whether it was a high class gun or a cheap gun, and that the scattering of the shot from the muzzle of the gun would be more in a greater distance than in a shorter, and that at a distance of three feet from the muzzle of the gun it would make a hole in the object struck from one to one and a quarter inches in diameter, and that at a distance of six feet the main hole would be smaller in diameter with some scattering shot around the main hole. This witness's evidence tended to show that the muzzle of the gun was close to the deceased at the time the shot was fired, there being no scattering of shot

around the wound, which was shown to be about an inch in diameter. After a careful consideration of all that was said by counsel and the court on this subject, we are satisfied that the court permitted all the evidence which had any tendency to aid the jury in reaching a conclusion as to the approximate distance of the defendant from the deceased when he shot him and that the exclusion of the other testimony in no manner wrought any harm or injury to the defendant. And there was clearly no reversible error in the action of the court in this regard. We have carefully read the whole record and noted the objections and exceptions to testimony made by defendant's counsel and we have been unable to discover any substantial ground for complaint in regard to the action of the court in admitting and rejecting testimony.

III. In regard to the instructions, it need only be said that the court correctly defined the words willfully, deliberately, premeditatedly, malice and malice aforethought as those words have time and again been defined with the approval of this court.

While we can discover no objection whatever to the instruction on murder in the first degree, inasmuch as the jury found the defendant guilty of murder in the second degree only, the instruction on murder in the first degree is not before us for review. The instruction defining murder in the second degree was correct and has often met the approval of this court.

The other instructions in regard to reasonable doubt, the presumption of innocence, the credibility of witnesses are all in the usually approved form. And the modifications of the instructions requested by the defendant were proper and afford no ground of complaint.

The court refused an instruction numbered one requested by the defendant, in regard to the weighing of testimony of the defendant himself, but there was

no harm in this action of the court, if for no other reason, because the court had given a proper instruction on this subject of its own motion in an instruction numbered six.

There was no error in refusing instruction number two prayed by the defendant, because there was absolutely no testimony on the subject and it could have done no good and its refusal worked no harm. It was entirely unnecessary.

IV. In the supplementary motion for new trial, complaint is made that the prosecuting attorney had no authority to file the information in this case, because the defendant had not been afforded a preliminary examination before a justice of the peace before the filing of said information. And the same ground is asserted in the motion in arrest. In State v. Jeffries, 210 Mo. 302, and in Ex Parte Buckley, 215 Mo. 93, it was held that it was not essential that an indictment or information should show upon its face that the defendant had been accorded a preliminary examination. In this case there is no merit whatever in the proposition in the motion for new trial that the defendant was denied a preliminary examination. The defendant himself introduced the record of the justice of the peace showing that he was brought before the justice for preliminary examination and expressly waived it. This was a privilege that he could waive. [Ex Parte McLaughlin, 210 Mo. 657; State v. McKee, 212 Mo. 138.]

V. Complaint is made in the motion for new trial of alleged improper remarks by the counsel for the State in the argument of the case. As to this it is only necessary to say that no exception to the court's action in this respect was made, and of course these remarks are not before us for review. This has been too often decided to require a citation of authority.

VI. Complaint is also made of a remark made by the trial court in excusing the regular panel of jurors and directing them not to remain in the court room during the progress of the trial, because there was a case on the docket to be tried immediately following this case, in which some of the same evidence would be introduced that was offered in this case. There is no force whatever in the point. The trial court was acting within his jurisdiction and the lines of his duty and his remark could not have had the remotest bearing upon the trial of this cause.

VII. Among other grounds for a new trial it is asserted that one of the jurors, John Q. Adams, was biased and prejudiced against the negro race in general, and that on the 5th day of May, 1909, he was engaged in a personal difficulty with John Stewart, a negro, because he refused to drink at the bar of a saloon at the same time this negro was drinking at the same bar. The *voir dire* examination of this juror is preserved in the record and he qualified as a competent juror and no objections or exceptions were taken to his sitting as a juror in the case. The mere fact that this juror refused to put himself on a social level with the negro Stewart did not disqualify him to sit in the trial of this cause or render him incompetent of rendering a fair and impartial verdict under the law and the testimony in the case.

VIII. Finally the cause was submitted to the jury under proper instructions and there was ample evidence to support the verdict. The defendant had a fair and impartial trial. According to his own evidence he left the house of the deceased and went to his own house across the street and armed himself with a deadly weapon and returned in the direction of the home of the deceased. Before firing the fatal shot he was fully advised that his brother Wes Green had left the premises of the deceased and was no longer

in any danger from the women who he claimed had assaulted him. In the street he encountered the deceased and according to the testimony on the part of the State he shot and killed the deceased when the latter was entirely unarmed and was making no demonstration of violence toward the defendant. On the other hand, the defendant had the benefit of his testimony before the jury that the deceased was approaching towards him with an uplifted pick and making a demonstration to assault him and that he fired the fatal shot to protect his own life. If the jury had credited his story they were bound to acquit him, but it is evident that they rejected it and chose to believe the witnesses for the State who contradicted his testimony. The jury were the triers of this fact and their verdict is final thereon. With the evidence before the jury they were fully justified in finding the defendant guilty of murder in the second degree, and it only remains for this court in the absence of any reversible error in the record to affirm the judgment, and it is accordingly so ordered. *Burgess* and *Fox, JJ.,* concur.