State v. Jones.

THE STATE v. JONES, *Appellant.*

Division Two, May 12, 1896.

1. **Criminal Practice**: CONTINUANCE: BILL OF EXCEPTIONS. The refusal by the trial court of a continuance in a criminal case will not be reviewed where the application is not incorporated in the bill of exceptions.

2. ———: MURDER: INDICTMENT. An indictment for murder which is otherwise sufficient is not defective because the conclusion commences "and the grand jury aforesaid upon their oaths aforesaid do say" instead of "and so the grand jury aforesaid," etc.

3. ———: INSTRUCTIONS: APPEAL. While it is the duty of the court on a criminal trial to instruct upon all the law of the case, its failure to do so must be excepted to at the time or it will not be reviewed on appeal.

4. ———: MURDER: EVIDENCE. In a murder case a witness for defendant, who was qualified as to his knowledge of the general reputation of deceased, stated it was bad. *Held*, that the court properly excluded other evidence by such witness, attempted to be drawn out by leading questions, to prove particular instances of boisterous and unlawful conduct by deceased.

*Appeal from Miller Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

AFFIRMED.

*W. S. Pope* with *John W. Moore* and *T. B. Robinson* for appellant.

(1) The conclusion of the indictment is insufficient. After stating the circumstances it should draw

the conclusion that "so" the defendant feloniously did. 3 Chitty's Crim. Law, p. 737; *State v. Pemberton*, 30 Mo. 376; *State v. Meyers*, 99 Mo. 107; *State v. Terry*, 103 Mo. 11; *State v. Rector*, 126 Mo. 328.   (2) The application for a continuance was improperly overruled.   (3) With this evidence before the jury, the court instructed as to murder in the first and second degrees, but failed to instruct as to lower degrees of homicide, although especially requested to do so as to manslaughter in the third and fourth degrees.   The defendant claims this to be error, and contends that the evidence warranted and required instructions as to manslaughter in the several degrees.   *State v. McKinzie*, 102 Mo. 620; *State v. Edwards*, 70 Mo. 480; *State v. Watson*, 95 Mo. 411; *State v. Curtis*, 70 Mo. 599; *State v. Branstetter*, 65 Mo. 149; *State v. Ware*, 62 Mo. 597.   (4) The court erred in excluding a portion of the evidence of George Gearhart.   The deposition was taken under the provision of section 4150, Revised Statutes, 1889.   The examination was conducted by the county and prosecuting attorney of the county in which the deposition was taken, and the part excluded is his cross-examination of the witness, to the benefit of which the defendant was entitled, after the same was brought out in the manner it was.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1)   The defendant complains that the court committed reversible error in overruling his application for continuance, but he did not preserve his application in his bill of exceptions, and hence this court will not undertake to investigate that proposition.   *State v. Griffin*, 98 Mo. 674; *State v. Pints*, 64 Mo. 317. (2) It is not explained in what respect the verdict is wrong,

or for what reason it should be in favor of the defendant. The testimony in this case shows the guilt of the defendant beyond question. The jury and the trial court, after hearing the testimony, have reached the conclusion that the defendant was guilty of murder in the second degree. This court will not undertake to weigh the evidence, and will only interfere with the verdict of the jury, because of the insufficiency of the testimony where there is a total failure of proof. *State v. Fisher*, 124 Mo. 462; *State v. Young*, 119 Mo. 494; *State v. Punshon*, 124 Mo. 448; *State v. Banks*, 118 Mo. 117. (3) Complaint is first made in the motion for new trial of the instructions given upon the part of the court. It is evident that at the time they were given counsel for appellant were satisfied with them, for no objections were made to any or all of them, nor were any exceptions saved to the giving of any of them. This being true, the defendant will not be heard to assert his complaint here. *State v. Bosler*, 119 Mo. 417; *State v. Foster*, 115 Mo. 448; *State v. Elvin*, 101 Mo. 243. (4) The remaining contention in the motion for new trial is that the court committed error so prejudicial to the defendant in both the admission of the testimony over his objections and the exclusion of his testimony upon the objection of the state. The first of these (page 4) was to the age of the oldest child of Mrs. Jackson, the wife of the deceased and the daughter of the defendant. The objection was simply "immaterial," which was equivalent to no objection at all. *State v. Nelson*, 33 S. W. Rep. 812; *State v. Harlan*, 32 S. W. Rep. 997; *State v. Moore*, 117 Mo. 395; *State v. Smith*, 114 Mo. 406; *State v. Adams*, 108 Mo. 208.

GANTT, P. J.—At the March term, 1894, of the circuit court of Miller county, Missouri, an indictment

for murder in the first degree was preferred by the grand jury against the defendant for the murder of Isaiah Jackson. The defendant was duly arraigned at the same term, and the cause continued until the September term. The cause was again continued at the September term. A trial was had at the March term, 1895, resulting in the conviction of defendant of murder in the second degree, and his punishment fixed at twenty years in the penitentiary. Motions for new trial and in arrest were filed and overruled and defendant appeals.

The testimony in this case discloses these facts: That on the morning of October 15, 1893, the deceased and his family, consisting of his wife and two children, aged two years and ten months, respectively, were residing temporarily in a house upon the land of the defendant; that the defendant and his family, consisting of his wife and four children, were temporarily residing in another house upon his farm, some ten or twelve feet from the house in which Jackson and his family had been staying; that the deceased and the defendant, with their families, had been to the Indian Territory and had returned to Miller county the night before the homicide; that during the night before the homicide a child of Jackson's had been sick; that in the morning the Jackson family arose quite early, prepared and ate breakfast with a view to taking the child to a doctor; that after they had finished breakfast, the defendant, Jones, came in and began upbraiding them for having eaten breakfast before the Jones family had gotten up; that Jones remarked, "now that the white folks have eaten, the niggers will eat;" that both became angered; between the war of words Jones got up from the breakfast table, placed his hand in his hip pocket and Jackson, who was sitting six or eight feet

away, got up and took his knife from his pocket, which remained unopened in his hand until after he left the room, when he returned it to his pocket; that when Jackson explained the reason for eating early that morning, he and wife were ordered from the house; that as Jackson left, Jones followed him to the door, took a double-barrel shotgun from the gun rack, which was just to the right of the door, leveled the gun and fired, the shot taking effect in the left side of the back. Jackson staggered and fell toward the corner of the house upon an ax which had been left there that morning after the cutting of some wood and kindling; that Jackson lived about fifteen minutes after he was shot.

The testimony tended strongly to prove that when the shot was fired, Jackson was walking in an easterly direction, and away from the defendant, and at the time the shot was fired he had no weapons in his hand or possession.

The defendant testified in his own behalf that he did not know whether he fired the shot, or whether the gun was discharged accidentally. He attempted to show by members of his family that the killing was in self-defense; some of his children testified that Jackson had the ax and was walking in the direction of Jones when the shot was fired. The defendant unsuccessfully attempted to impeach the character of his daughter, who was the principal witness for the state.

Various errors have been assigned and argued both orally and in the brief.

I. It was urged that the court erred in overruling the application of defendant for a continuance. This application is not made a part of the bill of exceptions and as it is not a part of the record proper it is not before us for review. Touching this point the bill of exceptions recites:

"The application for a continuance coming on to be heard it is made to appear to the court that all of the witnesses named in said application are now present here in court except H. C. Atkinson and the application for a continuance is overruled, to which action of the court defendant by counsel excepted then and there at the time."

The invariable practice has been to incorporate the application itself into the bill, otherwise it constitutes no part of the record.

II. It is next insisted that the judgment should have been arrested because the indictment is fatally defective. The indictment is in these words:

"In the Circuit Court of Miller county, to its March Term, 1894.

"STATE OF MISSOURI,  
"County of Miller. } ss.

"State of Missouri, Plaintiff,  
"v.  
"Jesse G. B. Jones, Defendant. }

"The grand jurors for the state of Missouri, summoned from the body of the inhabitants of Miller county, duly impaneled, sworn, and charged to inquire within and for the body of the county of Miller and state of Missouri, upon their oaths present and charge that one Jesse G. B. Jones, late of said county of Miller, on the fifteenth day of October, A. D. 1893, at the county of Miller, in the state of Missouri, then and there being, in and upon one Isaiah W. Jackson, then and there being, feloniously, willfully, deliberately, premeditatedly, on purpose, and of his malice aforethought, did make an assault, and with a dangerous and deadly weapon, to wit, a double-barrel shotgun, then and there loaded with gunpowder and leaden balls, which he, the said Jesse G. B. Jones, in both his hands then and there had and held at and against him, the said

Isaiah W. Jackson, then and there feloniously, willfully, deliberately, premeditatedly, on purpose, and of his malice aforethought, did shoot off and discharge, and with the double-barrel shotgun aforesaid then and there feloniously, willfully, deliberately, and premeditatedly, on purpose, and of his malice aforethought, did shoot and strike him, the said Isaiah W. Jackson, on the left side of the body of him, the said Isaiah W. Jackson, then and there with the dangerous and deadly weapon, to wit, the double-barrel shotgun aforesaid, and the gunpowder and leaden balls aforesaid, in and upon the left side of him, the said Isaiah W. Jackson, one mortal wound of the breadth of one inch and of the depth of six inches, of which said mortal wound the said Isaiah W. Jackson from the fifteenth day of October, A. D. 1893, until the fifteenth day of October, A. D. 1893, in the county of Miller and state aforesaid, did languish, and languishing did live, on which said fifteenth day of October, A. D. 1893, the said Isaiah W. Jackson, in the county of Miller, and in the state of Missouri, of the mortal wound aforesaid died.

"And the grand jurors aforesaid, upon their oaths aforesaid, do say that the said Jesse G. B. Jones, him, the said Isaiah W. Jackson, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose, and of his malice aforethought, did kill and murder, against the peace and dignity of the state.

"ELIAS C. SWALEM,

"Pros. Att'y Miller County, Mo."

"A true bill.

"Attest:    H. A. FLEETWOOD,

"Foreman of the Grand Jury."

The sole point in this objection is that the indictment is fatally defective because the word "so" is omitted from the conclusion, which is in these words:

"And the grand jurors aforesaid, upon their oaths aforesaid, do say that the said Jesse G. B. Jones, him, the said Isaiah W. Jackson, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose, and of his malice aforethought, did kill and murder, against the peace and dignity of the state," instead of averring, "and *so* the grand jurors aforesaid, upon their oath aforesaid, do say that the said Jesse G. B. Jones, him, the said Isaiah W. Jackson, in the manner and by the means aforesaid, feloniously, willfully, deliberately, premeditatedly, on purpose, and of his malice aforethought, did kill and murder against the peace and dignity of the state."

The point is so attenuated that it requires all of our respect for counsel to treat it seriously. The word "so" in this connection could only be equivalent to "hence" or "therefore" and signifies merely the logical sequence of the antecedent averments. While entirely proper and usual in common law indictments for murder, its omission has never been held fatal even at common law and most assuredly never will be in view of our statute of jeofails.

The learned counsel has entirely misapprehended the authorities cited to sustain his contention. They referred to the necessity of charging that the defendant did kill and murder, and not to the little copulative "so."

III. It is insisted that the court should have instructed on manslaughter in the third and fourth degrees.

The circuit court instructed fully on murder in the first and second degrees and self-defense. No complaint is made of these. The defendant did not submit any instructions on either degree of manslaughter, but made a formal request of the court to so instruct, which

the court declined, and defendant saved no exceptions to the refusal of the court to so instruct.

While it is the duty of the court to instruct upon the whole law of the case, it has been ruled by this court that its failure to do so must be excepted to at the time. In this case no objection at all was made to the instructions given and no exception saved to the refusal to instruct on manslaughter, and hence it can not be raised in this court now. *State v. Cantlin*, 118 Mo. 100; *State v. Paxton*, 126 Mo. 500.

IV. Finally it is said the court erred in excluding a portion of the deposition of George Gearhart, taken by and for defendant under section 4150, Revised Statutes, 1889, in Laramie, Wyoming. This witness was qualified as to his knowledge of the general reputation of deceased Jackson. Having stated it was bad, counsel for defendant then proceeded to examine and cross-examine him by leading questions to prove individual instances of boisterous and unlawful conduct. The ruling of the circuit court in excluding these questions and answers was clearly right.

No other prejudicial error appearing in the record, the judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.