THE STATE v. CORDY NAYLOR, Appellant.—40 S. W. (2d) 1079.

Division Two, July 3, 1931.

336

*Daniel C. Rogers* and *Samuel C. Major* for appellant.

338

*Stratton Shartel,* Attorney-General, and *A. B. Lovan,* Assistant Attorney-General, for respondent.

COOLEY, C.—Defendant, Cordy Naylor, appeals from the judgment of the Circuit Court of Howard County sentencing him to twelve years' imprisonment in the penitentiary upon conviction of murder in the second degree.

The fatal encounter occurred in Howard County on the night of September 22, 1928, near midnight. A pie supper had been held at the Baldridge school house, which had ended about ten o'clock. During and after the supper a crap game had been in progress in a near-by pasture, attended by varying numbers of boys and men, among whom were defendant and the deceased, Willard Conwell. The difficulty occurred at the crap game with about a dozen men present. Defendant, deceased and others were taking part in the game, which was being played by the light of a lantern upon a blanket spread upon the ground. Defendant and Conwell sat at opposite sides of the blanket, other participants being between them. A dispute arose between defendant and Conwell as to which was entitled to some money which had been placed on the blanket as a stake. Defendant picked up the money after a play, claiming he had won it. Conwell claimed defendant was not entitled to it. Both were then kneeling or sitting on the ground. After picking up the money defendant threw down a quarter for the next play, and Conwell picked it up and refused to relinquish it, because, he insisted, defendant had not fairly won the money on the previous play, and that the dice should be "shot" again to determine that play. Defendant refused to do that, insisting that the play had been fair and that Conwell give up the quarter he had picked up. The dispute became heated and both parties arose. As Conwell rose he threw an empty whiskey bottle at defendant, striking him on the shoulder, and, according to the State's evidence, turned to speak to one George Fisher, whereupon defendant drew his knife, stepped or jumped across the blanket and stabbed Conwell in the left side just above the hip, inflicting a wound from which Conwell died on September 24, 1928.

The defense was that defendant stabbed Conwell in self-defense. His testimony and that of his witnesses tended to show that as Conwell threw the bottle he said to defendant, who had arisen: "You sit down, you son-of-a-bitch, or I'll knock you down," and that he then threw his right hand behind him toward his hip pocket and advanced toward defendant—"kinda stepped towards me," as defendant testified, and that defendant stabbed him when he thus advanced. Defendant testified that he stabbed Conwell to protect himself from assault and great bodily harm by Conwell which he then apprehended. He denied that he stepped or jumped across the blanket toward Conwell, or that the latter was talking to some one else at the time he cut him. One of his witnesses, however, Jack Winn, testified that Conwell did not advance toward defendant, but that defendant stepped or jumped across the blanket toward Conwell and stabbed him while the latter was talking to some one else. The other witnesses called by defendant to corroborate his claim of self-defense were impeached by testimony of members of the grand jury which indicted defendant, to the effect that said witnesses had given testimony before that body different from their testimony at the trial and substantially in accord with the testimony of the State's witnesses at the trial. A number of witnesses called by defendant testified to his previous good character.

I. In his motion for new trial defendant assailed the indictment on the grounds that it did not charge any offense and did not state the venue, nor that the grand jurors were empaneled, sworn or charged, nor that their presentment was made upon their oaths. No such challenge of the indictment was made before trial by motion to quash or otherwise. The indictment begins thus:

"State of Missouri, Plaintiff,

vs.

Cordy Naylor, Defendant.

"In the Circuit Court of Howard County, Missouri, September A. D. 1928 term.

"The grand jurors for the State of Missouri, in and for the body of the County of Howard, upon their *present oath* and charge that . . . at the County of Howard and State of Missouri, Cordy Naylor . . ."

Then follows a sufficient charge of murder in the second degree by feloniously, wilfully, premeditatedly, on purpose and of malice aforethought, assaulting and stabbing Conwell with a knife, inflicting upon him a mortal wound, from which he died. The facts are sufficiently alleged. The indictment concludes: "And so the grand jurors aforesaid, impaneled, sworn and charged as aforesaid, *on their*

*oaths aforesaid,* say that the said Cordy Naylor, him the said Willard Conwell, at the county aforesaid, in the manner and by the means aforesaid, feloniously, wilfully, premeditatedly on purpose and of his malice aforethought, did kill and murder, against the peace and dignity of the State." (Italics ours.)

It is obvious that the venue is stated, not only in the caption but in the body of the indictment. The language "upon their present oath and charge" was undoubtedly a clerical mistake and intended to read "upon their oath present and charge," as shown by the language of the concluding part of the indictment. It is unnecessary further to discuss this challenge of the indictment in view of Section 3563, Revised Statutes 1929, which provides, among other things, that no indictment or information shall be deemed invalid or judgment or other proceedings thereon stayed or affected for want of a proper or perfect venue, "nor for an omission to allege that the grand jurors were impaneled, sworn or charged" nor for any other defect or imperfection not tending to prejudice the substantial rights of the defendant upon the merits. [See State v. Spano (Mo.), 6 S. W. (2d) 849.] We hold the indictment sufficient.

II. Appellant assigns error in the refusal of the trial court to sustain his application for continuance because of the absence of two witnesses, Jack Winn and George Fisher. The trial was on May 21, 1929. Defendant's application alleged that Fisher lived in Randolph County and that he had caused a subpoena to be issued for both witnesses on May 14, which the sheriff had returned as to Winn showing that he could not be found; that no return had been made as to Fisher but that a subpoena issued for him on behalf of the State had been returned showing that he could not be found. It was alleged in the application that Fisher, if present, would testify that he was present at the time of the difficulty between defendant and deceased and "in position to see and hear all that took place;" that deceased and defendant were engaged in a game of craps; that a dispute arose between them as to who was entitled to the money and that Conwell called defendant a G—d—son-of-a-bitch and told him to sit down or he would knock him down and threw a whiskey bottle at defendant striking him on the shoulder and then advanced upon him with his (Conwell's) right hand "reaching behind him" and that it was at that time that defendant struck Conwell with the knife.

The granting of a continuance because of absent witnesses is largely within the discretion of the trial court, and while the trial court's action in refusing it is reviewable here it is only when in our opinion the court erred to the prejudice of defendant's substantial right to a fair trial that we will reverse because of such refusal. We are

not so persuaded in this case. Defendant was indicted at the September, 1928, term of the court. At the succeeding January term the cause was continued on defendant's application to the May term. On May 6, the first day of that term, the cause was ordered set down for trial for May 21, on which day it was tried. Defendant had been given ample time to prepare for trial. His application for continuance in setting out what Jack Winn would testify to alleged the same facts that it alleged would be testified to by Fisher. Winn was present and testified. His testimony was not as favorable to defendant as the application alleged it would be, but the court could not know that in advance. Defendant called two other witnesses who were present at the time of the difficulty. There were present at the difficulty others who were not called by either side, and defendant offered no showing that he could not have obtained and used the testimony of such others. Had Fisher been present and testified as it was claimed he would, his evidence would have been cumulative as two of defendant's witnesses testified substantially to the same effect. True, they said they turned and left when Conwell reached toward his hip pocket and did not see him advance toward defendant, but defendant testified that he and Conwell were only about three feet apart when the argument began, the blanket being folded so as to make a narrow platform, and that when Conwell reached toward his pocket and "kinda started" toward him he himself "kinda leaned over" toward Conwell, so that on defendant's own testimony Conwell could have advanced slightly if at all. Generally the refusal of a continuance because of absent witnesses whose testimony would be merely cumulative is not reversible error.

If it be allowed that defendant used due diligence in ordering a subpoena for a witness living in another county only a week before the trial when he might have ordered it eight days earlier, or might previously have taken the witness' deposition, yet under all the circumstances we think the trial court did not abuse its discretion in refusing the continuance.

III. Appellant was only sixteen years of age when the homicide was committed and under seventeen at the time of the trial. It is insisted that the grand jury was without jurisdiction to indict him and that the court was without jurisdiction to proceed under the indictment as for a criminal offense, but that he should have been dealt with as a juvenile delinquent. Prior to the trial and on May 10, 1929, it having been suggested to the court by the prosecuting attorney that defendant was under seventeen years of age, the court caused the following order to be entered of record:

"It appearing to the undersigned Judge of the Court having jurisdiction of delinquent children that the defendant is a minor under the age of seventeen years and stands charged with murder in the second degree and that defendant is not a proper subject to be dealt with under the Reformatory provision of the Juvenile Law, it is therefore ordered that the State have leave to prosecute said defendant under the provisions of the general law.

"(Signed) A. W. WALKER, Judge."

The cause was proceeded with under the criminal law.

This question was thoroughly considered and decided adversely to appellant's contention by this court en banc in the recent case of State ex rel. Wells v. Walker, 34 S. W. (2d) 124, q. v. On the authority of that case which is in point and conclusive of the issue, we rule this point against appellant.

IV.  Complaint is made that the court, upon the State's challenge, excused a prospective juror, one Eaton, whose *voir dire* examination did not show that he was disqualified.  In one case cited by appellant in support of this complaint, State v. Garrett, 226 S. W. 4, the court excused twenty-two veniremen and caused twenty-two others to be summoned without consulting defendant. No objection was made until after verdict, when defendant in his motion for new trial charged error.  It was held that the objection came too late, but the opinion does not say the objection would have been good had it been timely made.  Other cases cited deal with the overruling of challenges for cause offered by a defendant and are not in point.  A defendant is entitled of course to a full panel of qualified jurors from which challenges are to be made and the trial jury selected.  But we know of no law or decision to the effect that he is entitled as of right to have any particular person on that panel. It may be doubted whether Eaton was disqualified.  But no complaint is made that the man chosen in his stead was not duly summoned and qualified and we fail to see wherein defendant was prejudiced.  A court may of its own motion examine and excuse veniremen and the exercise of this discretion is not available as error unless abused.  [State v. Taylor, 134 Mo. 109, 141, 35 S. W. 92.] The record does not indicate abuse of the court's discretion.

V.  Defendant requested that a panel of thirty men qualified to serve as jurors should be furnished and that he be allowed twelve and the State six peremptory challenges.  That request was refused and a panel of twenty-four was provided, allowing defendant eight and the State four challenges.  Error is assigned in that ruling, which calls for construction of Section 3674, Revised Statutes 1929.

The offense charged by the indictment was murder in the second degree, for which the punishment prescribed by statute is imprisonment in the penitentiary for not less than ten years with no limit to the duration of such imprisonment prescribed. In such case the offender may, by another statute, Section 4457, Revised Statutes 1929, be sentenced to imprisonment during his natural life or for any number of years not less than the prescribed minimum. Appellant contends that since the punishment *may be* life imprisonment the first subdivision of Section 3674, Revised Statutes 1929, applies. The applicable part of that section reads:

"In all criminal cases the state and the defendant shall be entitled to a peremptory challenge of jurors as follows: First, if the offense charged is punishable by death or by imprisonment in the penitentiary for life, the state shall have the right to challenge six and the defendant twelve, and no more; second, in all other cases punishable by imprisonment in the penitentiary the state shall have the right to challenge four and the defendant eight and no more; third, in all cases not punishable by death or imprisonment in the penitentiary the state and the defendant shall each challenge the number of three and no more; . . ."

The remainder of the section prescribes the number of challenges allowed each side in cities of over 100,000 inhabitants, being the same as previously allowed in such cities. Prior to 1925, by Sections 4017 and 4019, Revised Statutes 1919, the defendant and the State outside cities of over 100,000 population, were allowed challenges as follows: 1st, if the offense was punishable by death or imprisonment in the penitentiary, not less than for life, twenty and eight respectively; 2nd, if punishable by imprisonment in the penitentiary for not less than a specified number of years with no limit to the duration of such imprisonment declared, twelve and six respectively; 3rd, in all other cases punishable by imprisonment in the penitentiary, eight and four respectively; and 4th, in cases not punishable by death or imprisonment in the penitentiary, four each. In cities of over 100,000 inhabitants the defendant was given the same number of challenges, but the State was allowed a larger number than outside such cities in cases falling within the first two subdivisions. In 1925, in amending the code of criminal procedure, the Legislature repealed Sections 4017 and 4019 and enacted in lieu thereof what is now Section 3674, Revised Statutes 1929, the only substantial change being in the number of challenges allowed in prosecutions outside of cites of over 100,000 inhabitants.

It must be conceded that the legislative intent in the above quoted portion of Section 3674, so far as it applies to felonies, might have been more clearly expressed. As worded it may be plausibly argued, as appellant contends, that the first subdivision includes all felonies

for which, by applying Section 4457 as well as the statute defining the offense, the offender *may be* punished by either death or life imprisonment. On the other hand we think it susceptible of the construction that it was intended to include only those for which, by the terms of the statute defining the offense and prescribing the penalty, and without resort to Section 4457, supra, the penalty may be death or life imprisonment; thus making the first subdivision of Section 3674, Revised Statutes 1929, correspond in meaning and effect with the first subdivision of old Section 4017 as to the class of offenses included.

We are of the opinion that the latter is the correct construction of the statute in question. The statute uses the language "punishable by death or by imprisonment in the penitentiary for life." There are divers offenses to which that language applies if we treat the first subdivision of Section 3674, supra, as including only offenses to which the statute defining them affixes such punishment as, for example, murder in the first degree, for which the punishment is specifically death or life imprisonment; rape, for which the punishment fixed by the statute may be death; certain offenses for which under the "habitual criminal" act, Section 4461, Revised Statutes 1929, the punishment must be "imprisonment in the penitentiary for life." Such offenses fell within the first subdivision of old Section 4017. It is true the word "punishable" in the second subdivision of Section 3674, supra, clearly means "may be punished," because there are many offenses for which the punishment may be imprisonment in the penitentiary or may be imprisonment in jail or a fine, but in those cases such punishment is provided by the statute defining the offense. The seeming incongruity of construction disappears if we treat the language of Section 3674, supra, relative to punishment as referring to the punishment designated in the statute defining the offense and providing the punishment therefor, and as not applying to those offenses for which, under Section 4457, supra, the punishment may be assessed at life imprisonment but for which the statute defining the offense does not prescribe such penalty.

We do not lose sight of the fact that all statutes that may be applicable must be read and construed together and if possible harmonized. The construction of Section 3674 above indicated does not render it out of harmony with Section 4457 or with other provisions of the statute, any more than did the express provisions of old Section 4017 make that section inharmonious with other statutory provisions. It is a question of what the Legislature intended by the language used in the amendatory statute. In seeking that intent, which is the purpose of statutory construction when the language of the act is such that judicial construction is necessary, we may con-

sider the purpose the Legislature apparently had in view in amending the former law.

There are many crimes for which the statutes defining them prescribe as punishment a minimum term of imprisonment in the penitentiary without prescribed limit to the duration of such imprisonment. In some of them the minimum imprisonment is fixed at two years only. In such cases the offender could be sentenced to life imprisonment, as above pointed out. But it has always been the policy in our criminal procedure, as evidenced by the applicable statutes, to allow more challenges in those grave cases falling within the first subdivision of old Section 4017 than in cases in which the punishment, at the discretion of the jury, may be a term equivalent to life imprisonment or may be (and usually is) a shorter term in the penitentiary. The provisions of Sections 4017 and 4019 relative to the number of challenges allowed had been the statute law of this State for sixty years or more prior to the amendment of the criminal code in 1925. The purpose of that amendment evidently was to reduce the number of peremptory challenges allowed in criminal prosecutions, except in cities of over 100,000 inhabitants, in which cities the provisions of the old law were retained. Such purpose would be defeated by the construction of the statute contended for by appellant as to offenses punishable by imprisonment in the penitentiary for not less than a specified number of years without prescribed limit to the duration of such imprisonment. The number of challenges allowed the defendant and the State in such cases would by such construction remain twelve and six respectively as under the old statute. We think there is good reason for the difference heretofore always made by statute generally, and still made by the express terms of Section 3674, supra, as to the larger cities, between the number of challenges which should be allowed in the class of cases last above mentioned and those grave offenses included in the first subdivision of old Section 4017. Reasons may be seen also for reducing generally the number of peremptory challenges previously allowed in criminal cases. But we do not believe the Legislature meant to depart from the long established policy of allowing more challenges in cases of gravest import than in those of less serious nature, and to make a reduction applying as to felonies only to those of most serious gravity outside cities of over 100,000 inhabitants, as would be the effect of Section 3674 if we adopted the construction contended for by appellant. Had the Legislature intended so radical a change in the policy evidenced by statutes of such long standing and had it intended, moreover, to make a distinction in that respect between the large cities and the rest of the State, we think it would have expressed that intent in clear and unmistakable terms, as might easily have been done. It may be observed further that the fact that

in cities of over 100,000 inhabitants Section 3674 in express terms allows more challenges in cases where the punishment may be death or imprisonment not less than for life than in other cases, seems to us to indicate a legislative intent to adhere to the general policy in that regard hereinabove referred to.

We hold that, as ruled by the trial court, appellant was entitled only to a panel of twenty-four qualified jurors, of whom the State was entitled to challenge four and the defendant eight.

VI. Error is assigned in that the court excluded record evidence offered by defendant to prove that Conwell had, several years previously, been convicted of carrying a concealed weapon. Appellant insists that such evidence, coupled with his offered proof that he had heard of such conviction, was competent as bearing upon the reasonableness of his apprehension of great bodily harm from Conwell at the time of the difficulty. We think not. There was nothing in defendant's offer of proof to indicate that the carrying of the weapon by deceased had any relation or reference to defendant. Evidence that deceased bore the reputation of being of turbulent or violent disposition or character would have been competent since the defense offered was self-defense. But such reputation or character could not be proved by evidence of specific acts of violence having no connection with or relation to defendant. [State v. Roberts (Mo.), 242 S. W. 669; State v. Green, 229 Mo. 642, 129 S. W. 700; State v. Woods, 274 Mo. 610, 204 S. W. 21; State v. Jones, 134 Mo. 254, 35 S. W. 607.] Upon the same principle the offered evidence that deceased had once carried a deadly weapon was properly excluded.

VII. Before the trial the appearance of A. B. Lovan, Assistant Attorney-General, was entered of record as assistant counsel for the State. Defendant objected to his participation in the trial on the ground that there had been no proper order from the governor to the Attorney-General directing the latter to send an assistant to Howard County to assist the prosecuting attorney. The letter of the Governor to the Attorney-General directed the latter to proceed or to send an assistant to Fayette County instead of to Fayette in Howard County, clearly an inadvertence since there is no Fayette County in the State. In an early case, State v. Hays, 23 Mo. 287, it was held that the Attorney-General had a right to assist the circuit attorney when so requested by the latter, without an order from the Governor. We see no reason why he might not do so, as employed counsel might. In this case there was an order from the governor, sufficient except that, clearly by mistake which deceived no one, it misnamed the county.

The prosecuting attorney was present acting officially for the State and both he and the assistant were under the control and supervision of the court. Defendant was not prejudiced by the error in the Governor's order.

VIII. Appellant assigns as error: (a) that Mr. Lovan, in argument to the jury, was permitted "to refer to crime waves in Missouri and other states;" (b) failure to reprimand the same counsel for stating in argument: "1 would feel I was as guilty as the defendant himself to try to persuade the jury to bring in a verdict of guilty when there ought to be a verdict of acquittal;" and (c) permitting argument by counsel for the State "without evidence to support him" that defendant had on other occasions used a knife.

(a) Mr. Lovan stated in argument: "There has come a time in Missouri as well as in other states, when it is necessary that there should be an extraordinary effort to impress the juries who sit in criminal cases with the importance of enforcing the law." Defendant objected "to that line of argument—he is speaking of the prevalence of crime." We think that argument was not prejudicial.

(b) We are not persuaded that the remark above quoted in clause (b) was prejudicial and moreover the bill of exceptions in setting out that part of the argument does not show that defendant at the time excepted or requested a reprimand.

(c) In his opening argument the prosecuting attorney said: "Evidence has been brought out that this is not the first occurrence that the defendant has used a knife—you heard that evidence. A man of that type needs restraining. The State of Missouri's welfare is deeply concerned." Defendant's counsel: "We object and except to that argument." The court: "Well, overruled. Stay within the record." It is not clear from defendant's objection whether it was to counsel's reference to the use of a knife or to his reference to the welfare of the State. No further action by the court was requested.

In his closing argument Mr. Lovan referred to defendant as being in the habit of using a knife, that he had used it on two occasions. Objection was made and sustained and counsel was admonished to stay within the record, whereupon he withdrew the remark. There was no request for a reprimand, defendant seemingly being satisfied with the court's action.

There was evidence intimating that defendant had, on prior occasions, used a knife in some difficulty with one or two other boys, but it came by way of impeachment of defendant's character witnesses who testified on cross-examination that they had heard of such incidents. It should have been treated by counsel as bearing only upon that issue. But upon the record presented we cannot say that

defendant was prejudiced, particularly in view of the fact that when such reference was specifically objected to the objection was sustained, the remark withdrawn and no further action requested of the court.

IX. It is argued that there was no substantial evidence to sustain the verdict; that if any offense was committed it was only manslaughter. We do not agree with this contention. The State's evidence was sufficient to sustain the verdict finding defendant guilty of murder. The court submitted manslaughter by an instruction, the sufficiency of which is not challenged, but the jury found against defendant on that issue.

The verdict and judgment are in due form. Finding no reversible error in the record the judgment is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.