THE STATE v. CHESLEY R. YOWELL, Appellant.—55 S. W. (2d) 991.

Division Two, December 14, 1932.

*Louis J. Rosse* for appellant.

*Stratton Shartel,* Attorney-General, for respondent; *Silas E. Garner* of counsel.

FITZSIMMONS, C.—Defendant was found guilty in the Circuit Court of Saline County of assault to kill but without malice, and his punishment was assessed at four years' imprisonment in the penitentiary. His motion for a new trial was overruled, sentence was imposed and an appeal was taken. The specific charge was that appellant cut one J. Shelton Thomas with a knife with intent to kill him in the city of Marshall, Saline County, on January 12, 1931.

I. Before we may examine any assignments of error, we must determine whether there is in the transcript of the record and proceedings before us a copy of a true or valid bill of exceptions. The trial judge refused to sign a bill which appellant presented to him for this reason, indorsed upon the bill: "I refuse to sign the Bill of Exceptions presented herein, for the reason that the matters set out on page 118-A under heading, 'Statements of Prosecuting Attorneys in Argument,' did not occur as therein stated and that the Bill is not true as therein set out." The trial judge then gave his version of what occurred. But let us first examine the objectionable page, 118-A. It shows upon its face that it was prepared and inserted by counsel for appellant in a bill which the court stenographer had written, and it states matter not mentioned in the stenographer's transcription. Page 118-A recites in substance that, in the opening argument to the jury, the assistant prosecuting attorney stated that under the evidence, ten or fifteen years ago, the defendant had cut another man; that one jury then had failed to do its duty, and that, because of that fact, defendant was before another jury and if the jury which was being addressed failed to do its duty, that maybe in ten or fifteen years more, the defendant would cut up another man. The inserted page further recited that the prosecuting attorney, in the closing argument, repeated the statements of his assistant of a previous affray of defendant; that counsel for defendant objected to the statements of the prosecuting attorney as a repetition of the statements of his assistant which were "highly poisonous;" that the

court stated there was no evidence of a previous cutting scrape and directed the prosecuting attorney to argue the evidence; that counsel for defendant excepted to the reprimand; that he asked the court to rebuke severely the prosecuting attorney for his statements; that he stated that the given reprimand of the court would not take away the sting of the opening statements of the assistant prosecutor and of the repetition of those statements by the prosecutor; that counsel for defendant asked for the discharge of the jury, and that the court gave no further rebuke to the prosecuting attorney who continued in his closing arguments.

The version of the trial judge of the events stated on page 118-A given in his indorsed refusal to sign the bill is as follows: "The prosecuting attorney did either in his opening statement or argument make a statement to the effect set out and defendant did object to the same. The objection was promptly sustained and the jury was told by the court that there was no such evidence and the prosecuting attorney was told that he should not make such a statement, that he should confine himself wholly to the evidence. There was no request made for further action or criticism by the court and no request that the remarks of counsel or the action of the court be preserved by the stenographer and same was not preserved by him. Dated this 17th day of June, 1932, and delivered back to defendant's attorney this the 17th day of June, 1932."

 The refusal of a trial judge to sign a bill of exceptions may raise serious and delicate questions. An unsigned bill of exceptions is invalid. "Lacking such signature (of the judge) it is no bill of exceptions," Reno et al. v. Fitz Jarrell et al., 163 Mo. 411, 63 S. W. 808, l. c. 809, citing Cooper v. Maloney, 162 Mo. 684, 63 S. W. 372. Mandamus is the only method, in a proper case, of compelling the trial judge to sign a bill of exceptions. If his refusal to sign has been improper, it cannot be corrected on appeal. [Priddy v. Hayes, 204 Mo. 358, 102 S. W. 976.] To avoid controversies, sometimes bitter, as the last cited case illustrates, remedial statutes have been enacted. Section 1010, Revised Statutes 1929, provides that if a judge refuses to sign a bill on the ground that it is untrue, he shall certify thereon the cause of such refusal. This the trial judge did in the instant case.

██ Section 1011, Revised Statutes 1929, provides that if the judge refuses to sign the bill of exceptions, the bill may be signed by three bystanders. Appellant here caused the controverted bill to be signed by three bystanders who stated in their certificate that the bill was true. Section 1011 further provides that the court or judge in vacation shall permit every such bill signed by bystanders "if the same be true" to be filed in court or in the clerk's office, "if ordered to be filed in vacation, within the time specified in such order of the court." In the instant case the judge did not permit the bystanders'

bill to be filed in court or in the clerk's office in vacation. It is true that the record proper states that the bystanders' bill was presented by appellant and was filed by the clerk and made a part of the record. But this proceeding was in vacation on June 18, 1932, the day after the judge by his certificate had delivered the bill back to appellant's attorney. And the filing of the bill in vacation as shown by the record proper was without any permission of the court or of the judge. Therefore, for lack of an ordered filing, the proceeding of the clerk did not change the status of the bill as an unsigned and unfiled instrument. And because it was not filed by proper order, it was not validated by the signatures of the three bystanders.

Appellant recognized this situation for he resorted to the further procedure prescribed by Section 1014, Revised Statutes 1929, which provides: "When the judge shall refuse to permit any bill of exceptions signed by the bystanders to be filed, and shall have certified that it is untrue, either party in the suit may take affidavits, not exceeding five in number, in relation to its truth." On June 22, 1932, appellant filed with the clerk in vacation separate affidavits of five persons, three of whom were jurors in the trial of the case. These affidavits were identical in form, lawyerlike in their composition, and in complete conformity with appellant's version of a motion for a second reprimand of the prosecuting attorney and a motion for the discharge of the jury and refusal of the court to act upon these motions.

Section 1015, Revised Statutes 1929, provides that on appeal copies of these affidavits shall be annexed to and form a part of the record of the cause. This section has been complied with and the affidavits are before us. Finally, Section 1017, Revised Statutes 1929, directs that the truth of every such bill shall be tried by the affidavits required by the preceding sections to be taken and to be filed in the clerk's office.

The court said in the early case of Bowen v. Lazalere, 44 Mo. 383, l. c. 385: "As this statutory mode of bringing up the facts of a case is unusual, and is liable to embarrass the appellate court by the necessity imposed upon it of deciding the truth of the bill, we take the opportunity of saying that it ought to be avoided if possible." And a like unwillingness to sit in judgment was voiced by the St. Louis Court of Appeals in State ex rel. Winsor v. Taylor, 134 Mo. App. 430, 114 S. W. 1029. But we lose our sense of awkwardness in the instant case when we note that the prosecuting attorney did not see fit to file counter affidavits putting at issue the allegations of appellant's. If we had to decide alone between appellant's affidavits and the trial judge's stated reason for not signing the bill, we would not hesitate to rule that the judge's version of the disputed proceedings was the correct one. He of all men would know and remember whether ap-

pellant's counsel pressed for a second and more severe reprimand of the prosecuting attorney and for the discharge of the jury. Besides the bill of exceptions gives abundant proof that throughout the two-day trial the judge was alert, precise in his rulings, watchful of and at all times, even solicitous for the rights of appellant, and ever ready to check, reprove or aid counsel for the State and appellant to the ends of justice. But the statute (Sec. 1017) states that we shall try the truth of the bill by the affidavits. And we have before us only the affidavits filed by appellant. We have not the aid of counter affidavits, which were before the court in State v. Hronek, 95 Mo. 79, 8 S. W. 227. An issue of fact has not been presented to us. In these circumstances we are constrained to judge that the truth of the case is fairly stated in the bill as presented by appellant, and therefore that we admit that bill as part of the record of the cause. [Sec. 1016, R. S. 1929.] The court adopted this view in Bowen v. Lazalere, supra, in which only supporting affidavits were filed. The court there said: "We are bound to treat this bill of exceptions as true, even though certified by the court to be untrue, and sustained by the affidavits of parties interested. The other party had a right to file counter-affidavits, but failed to do it; and it is before us unimpeached. and makes a case upon which the defendant is entitled to the opinion of the jury, under instructions as to what constituted fraud in law." [44 Mo. l. c. 389.]

■ II. The bill of exceptions being before us, what of the argument of the prosecuting attorney? Appellant, by the bill, made no objection to the statements of the assistant prosecuting attorney in the opening argument to the effect that appellant had cut another person years before. But, when the prosecuting attorney in the closing address restated the same extraneous matter, appellant objected to the repetition of the "poisonous language." When the court informed the jury that there was no evidence of a former affray and admonished the prosecuting attorney to "argue the evidence," appellant demanded a more severe rebuke and moved for a discharge of the jury, neither of which courses the court took. Is he entitled to a reversal on this ground? A brief review of the facts may aid. Appellant was employed as a salesman in the Marshall, Missouri, branch of an automobile company. J. Shelton Thomas, the manager of the Marshall branch, had refused to allow appellant certain commissions. A controversy arose and Thomas discharged appellant early in the afternoon of January 12, 1931. Thomas requested appellant to surrender certain keys of the automobile agency premises and appellant laid the keys on Thomas' desk. But when a few minutes later appellant started for Sedalia to see the general manager, he took back the keys. Appellant returned from Sedalia to the automobile agency at Marshall, late on the afternoon of the same day and Thomas again

demanded the keys. Appellant refused to give them up and the testimony indicates that Thomas declared he would not let appellant leave the premises until appellant gave up the keys. Thomas took a position at the door. The evidence is conflicting as to the first blow. Witnesses for the State testified that appellant, having his hands in his overcoat pockets, withdrew them and with his right hand struck Thomas a blow on the left check. Blood flowed as from a wound, and Thomas then struck appellant with his fist. Appellant next struck Thomas on the right side of the face and blood streamed from a wound. Thomas then struck appellant a second time, clinched and threw him to the floor. As appellant fell, an open knife flew from his hand.

Appellant testified that Thomas struck the first blow. As appellant reeled he drew a knife from his pants pocket, opened it and cut Thomas on the left check in self-defense. When Thomas struck him again, appellant cut Thomas on the right cheek. A physician who examined Thomas immediately after the fight, testified that the wound on the right side of his face extended from the corner of the ear to the angle of the mouth and penetrated through the flesh to the jaw and the teeth. Muscles and arteries were severed. The cut on the left side was not so long nor so deep. Thomas sat in a chair in his office, held his head over a coal bucket and lost what witnesses estimated to be a quart of blood. He was a patient in a hospital for a week, and in bed at home for three weeks, the wound having become infected. Appellant was charged with assault with intent to kill, "on purpose and of malice aforethought." [Sec. 4014, R. S. 1929.] The jury found him guilty of assault to kill without malice.

It has often been held by this court that it is reversible error for the prosecuting attorney in his argument to the jury over the objection of the defendant, to make mention of matters particularly other offenses not sustained by the evidence, and prejudicial of the right of the defendant to a fair and impartial trial. In the instant case as we have seen, the assistant prosecuting attorney in the opening address, spoke of a previous cutting affray without any objection by appellant. But when the prosecuting attorney in the closing argument referred to the fact that appellant had cut another man, appellant objected that the argument of the assistant prosecutor in the opening statement "had been highly poisonous and was intended to prejudice and influence the jury toward the defendant and this argument (of the prosecuting attorney) was re-iteration." The bill of exceptions does not tell us to what extent or in what words the prosecuting attorney referred to the statements of his assistant. Whatever harm was done was by the statements of the assistant prosecuting attorney to which statements no objection was made at the time. The objection made during the closing address of the

prosecuting attorney was directed primarily at what the assistant prosecutor had said in the opening argument. The court admonished the prosecuting attorney, and we cannot find, under the circumstances of this case that the court erred in not administering a more severe rebuke and in not declaring a mistrial and discharging the jury.

■ III. Appellant assigns as error that a panel of twenty-four men instead of thirty was called to the jury box for *voir dire* examination. His objection is that the offense with which appellant was charged is punishable by imprisonment in the penitentiary for not less than two years without any maximum term being fixed. He argues that appellant might have been punished by imprisonment for life, and therefore that he was entitled to a panel of thirty men. The assignment is without merit. This court examined the same objection in the case of State v. Naylor (Mo.), 328 Mo. 335, 40 S. W. (2d) 1079, in which the defendant was charged with murder in the second degree. We ruled there that a defendant is entitled to a panel of thirty men qualified to serve as jurors under the first subdivision of Section 3674, Revised Statutes 1929, only in cases in which by the terms of the statute defining the offense charged the penalty is death or imprisonment for life. The opinion in the Naylor case also gives a defendant a right to a panel of thirty jurors in any case in which the offense charged may be punished by death even though a prison term less than life alternatively may be imposed. That is because the punishment of death is mentioned only in the first subdivision of Section 3674, Revised Statutes 1929. The number of challenges to which appellant and the State were entitled in the instant case and therefore the number of men to be called to the jury box are fixed by the second subdivision of Section 3674. The trial court complied with the terms of the second subdivision.

■ IV. Appellant assigns sundry errors all of which we have examined. We do not find that any of them have merit or call for specific discussion. Some relate to the admission of evidence, others to its exclusion. The instructions given are assailed upon the ground that they are confusing and prejudicial. We do not so consider them. We do not find that the court erred in refusing to give four instructions asked by appellant. The alleged misconduct of two jurors is the subject-matter of two assignments in appellant's motion for a new trial. But there is no evidence of such misconduct except appellant's allegations in the motion itself. It is a familiar rule that motions do not prove themselves. Reversible error not appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.