**STATE of Missouri, Appellant,**

v.

**Thomas GRAHAM, Respondent.**

**No. ED 83794.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 28, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 4, 2004.

Application for Transfer Denied
Dec. 21, 2004.

Edmund Postawko, St. Louis, MO, for appellant.

J. Christian Goeke, Arthur S. Margulis, St. Louis, MO, for respondent.

Before CLIFFORD H. AHRENS, P.J., WILLIAM H. CRANDALL JR., J., and LAWRENCE E. MOONEY, J.

PER CURIAM.

The State of Missouri ("State") appeals from the judgment of the trial court sustaining Thomas Graham's ("Graham") motion to dismiss the indictment against him for sodomy under section 563.230 RSMo 1969 based on the expiration of the statute of limitations.[1] State contends that the trial court erred in dismissing the indictment because there is no statute of limitations for the 1969 sodomy statute. We reverse and remand.

On December 17, 2002, the grand jury indicted Graham on the felony charge of sodomy, in violation of section 563.230, for an act or acts that allegedly occurred on or between January 12, 1975, and December 31, 1978. Graham filed a motion to dismiss the indictment on the ground that the statute of limitations had run on this charge, and had never been tolled. This motion was denied after argument on June 27, 2003. Graham filed a motion for rehearing of his motion to dismiss on September 20, 2003. After argument on this motion, the trial court dismissed the indictment with prejudice on the basis that it is barred by the statute of limitations. The State now appeals from this judgment.

In its sole point on appeal, the State contends that the trial court erred in sustaining Graham's motion to dismiss because there is no required time limit in which it had to bring the charge of sodomy under section 563.230 against Graham. State further argues that section 563.230 is an open-ended statute that has a minimum sentence of imprisonment but no maximum sentence of imprisonment, and therefore allows for the imprisonment of Graham for life if he were to be found guilty as charged. The State avers that because this is an open-ended statute permitting imprisonment for life, the applicable statute of limitations for sodomy prior to January 1, 1979, is section 541.190.

Section 541.190 states that "Any person may be prosecuted, tried and punished for any offense punishable with death or by imprisonment in the penitentiary during life, at any time after the offense shall have been committed." Section 563.230 provides that "Every person who shall be convicted of the detestable and abominable crime against nature, . . ., shall be punished by imprisonment in the penitentiary not less than two years." The Missouri Supreme Court has interpreted such language to mean that it would permit punishment up to life imprisonment in the penitentiary. *State v. Bray,* 246 S.W. 921, 922 (Mo.1922).[2] Although a new criminal

---

1. All further statutory citations are to RSMo 1969 unless noted otherwise.

2. State also cites to *State v. Ricci,* 914 S.W.2d 475, 479 (Tenn.1996), which states that the "applicable punishment for determining the

code went into effect on January 1, 1979, section 556.031 RSMo 1978 addressed the issue of crimes committed prior to January 1, 1979. That statute provided that the new revisions would govern the construction and punishment for any offense committed after January 1, 1979, but did not apply or govern the construction of and punishment for any offense committed prior to that date, or "the construction and application of any defense to a prosecution for such offenses."

■■■ In analyzing a criminal statute, this Court determines the legislature's intent from the language of the statute, and gives effect to that intent. *State v. Daniel,* 103 S.W.3d 822, 826 (Mo.App.2003). We examine the language used in the statute according to its plain and ordinary meaning. *Id.* We particularly look to whether the language is clear and plain to a person of ordinary intelligence. *Id.* "Where the statutory language is unambiguous, we need not resort to statutory construction and must give effect to the statute as written." *Id.* The disjunctive "or" in its ordinary sense marks an alternative generally corresponding to the term "either." *Council Plaza Redevelopment Corp. v. Duffey,* 439 S.W.2d 526, 532 (Mo. banc 1969); *Stonger ex rel. Stonger v. Riggs,* 85 S.W.3d 703, 708 (Mo.App.2002). Every word, clause, sentence and section of a statute should be given meaning, and under the rules of statutory construction statutes should not be interpreted in a way that would render some of their phrases to be mere surplusage. *Hadlock v. Director of Revenue,* 860 S.W.2d 335, 337 (Mo. banc 1993); *Stewart v. Williams Communications, Inc.,* 85 S.W.3d 29, 35 (Mo.App. 2002).

Applying the plain and ordinary meaning of the disjunctive "or" in section

541.190, that statute states that there is no applicable statute of limitations for a crime that may be punished by either death or by imprisonment for life, which would include the crime at issue in this case. To hold that there is no statute of limitations only for those crimes punishable by death would make the phrase "or by imprisonment in the penitentiary during life" mere surplusage. Graham contends, however, that this is not correct. Graham cites to *Garrett v. State,* 481 S.W.2d 225 (Mo. banc 1972) as support for the argument that the language in section 541.190 means that the statute only applies to crimes for which the punishment is death or life imprisonment, and not crimes that have less than life imprisonment as a minimum sentence. The Missouri Supreme Court stated,

> We have concluded that the phrase "punishable by a sentence of death or life imprisonment" embraces "only those offenses having as alternative punishments life imprisonment or death," and "does not embrace offenses which have a sentence of less than life imprisonment as a minimum and a maximum of either life imprisonment or death."

*Id.* at 227 (quoting *Jaramillo v. District Court,* 173 Colo. 459, 480 P.2d 841, 842–43 (1971)). While this would appear to address the language of the statute of the case at hand, it is necessary to note that in *Garrett,* the Missouri Supreme Court was determining the scope of its own exclusive appellate jurisdiction and construing the Missouri Constitution, and not interpreting a statute concerning the statute of limitations. As such, it is distinguishable from the case before us in which the legislature has stated its intent in plain and clear language that for crimes committed prior to January 1, 1979, there is no statute of limitations for crimes punishable by either death or by life imprisonment.

appropriate statute of limitations is the maxi-

mum punishment available for an offense."

In a motion for rehearing following the court's original opinion, Graham further cites to *State v. Naylor*, 328 Mo. 335, 40 S.W.2d 1079 (1931) and several cases based on *Naylor* to support his argument that the language in section 541.190 means that the statute only applies to crimes for which the punishment is death or life imprisonment.[3] The Missouri Supreme Court in *Naylor* construed the language of a statute concerning the number of peremptory challenges in criminal cases and the size of jury panels. The statute at issue in that case, section 3674 RSMo 1929, stated in part that:

> In all criminal cases the state and the defendant shall be entitled to a peremptory challenge of jurors as fo[l]lows: First, if the offense charged is punishable by death or imprisonment in the penitentiary for life, the state shall have the right to challenge six and the defendant twelve, and no more; second, in all other cases punishable by imprisonment in the penitentiary the state shall have the right to challenge four and the defendant eight and no more . . .

The Missouri Supreme Court construed this to mean that a defendant was entitled to twelve peremptory challenges when the penalty "may be death or life imprisonment" under the terms of the statute defining the offense and prescribing the penalty.

The Missouri Supreme Court noted that the defendant's suggested construction of that statute, namely that a defendant facing a penalty that did not include death, but with a minimum sentence in the peni-

tentiary and no express maximum sentence, and hence a potential sentence of life imprisonment, would be entitled to twelve peremptory challenges, was a plausible construction. The Missouri Supreme Court concluded that while the defendant's construction of the statute was plausible, it was not correct. The Missouri Supreme Court, however, made it clear that it based its construction of the statute upon the legislative intent in enacting section 3674, which amended the previous statutes concerning peremptory challenges, and devoted considerable analysis to determining what the intent of the legislature had been. The Missouri Supreme Court's construction of the language of section 3674 is limited to the statutes regarding peremptory challenges in criminal cases. In the most recent case on this issue cited to by Graham, *State v. Morgan*, 453 S.W.2d 932 (Mo.1970), the Missouri Supreme Court implicitly reaffirmed this limitation. It recapped the analysis and rationale of its holding in *Naylor*, and noted its reliance on legislative history and legislative intent in construing the statute relating to peremptory challenges, observing that that has been the uniform construction of such language in statutes addressing the number of peremptory challenges.

The statutory construction applied in the peremptory challenge cases is not applicable to the statute in the case before this Court. The language of section 541.190 is neither vague nor ambiguous. In construing that section, we apply the plain and ordinary meaning of the disjunctive "or" and conclude that that statute states that

---

3. Graham also cites to *State v. Yowell*, 331 Mo. 716, 55 S.W.2d 991 (1932), *State v. Barrett*, 406 S.W.2d 602 (Mo.1966), and *State v. Morgan*, 453 S.W.2d 932 (Mo.1970) in support of his argument. *Yowell* cites directly to *Naylor*. *Barrett* relies on the same construction of the relevant statute, but offers no further explanation. *Morgan* cites to *Naylor*, noting the Missouri Supreme Court's reliance on legislative history in construing the statute relating to peremptory challenge, and observes that that has been the uniform construction of that language in statutes addressing the number of peremptory challenges, citing *Yowell* and *Barrett* as examples of that construction.

there is no applicable statute of limitations for a crime that may be punished by either death or by imprisonment for life, which includes the crime at issue in this case.

Moreover, the legislative history concerning statutes of limitation supports our interpretation in this case. In the Comment to the 1973 Proposed Code concerning statutes of limitations in criminal cases, its authors stated:

> With some minor changes this section maintains the same periods of limitation [ ] formerly covered by sections 541.190 through 541.230 RSMO [1969]. Section 541.190 provided for no limitation in the prosecution of an "offense punishable with death or by life imprisonment in the penitentiary during life." Subsection 1 of the Code provision achieves the same result but in terms of "murder or Class A Felony".

The language of the 1973 Proposed Code was adopted by section 556.036 RSMo 1978. According to section 557.021.1(a) RSMo 1978, a class A felony is a crime for which the authorized penalty "includes death, life imprisonment or imprisonment for a term of twenty years or more." This legislative history suggests that the Missouri Legislature regarded section 541.190 as setting no statute of limitations for both crimes punishable by death and for crimes punishable by life imprisonment in the penitentiary, and not only for crimes that authorized a punishment of death and as an alternative to death, life imprisonment.[4]

Tennessee courts have interpreted a similar statute of limitations provision providing that there was no limitation for certain offenses. In *State v. West*, 737 S.W.2d 790 (Tenn.Crim.App.1987), the court noted that the maximum punishment for aggravated rape was imprisonment for life, and held that time would not bar the commencement of prosecution because there was no statute of limitations for offenses punishable with death or by life imprisonment. The relevant statute of limitations provision in that case, T.C.A. section 40.2–101(a) provided that:

---

**4.** This Court also notes that the language in section 541.190 was used to set the statute of limitations in Missouri at least as far back as 1835. "Practice and Proceedings in Criminal Court," Article IX, section 23 RSMo 1835 stated "Any person may be prosecuted, tried and punished, for any offence punishable with death, or by imprisonment in the penitentiary during life, at any time after the offence shall be committed." The only crime in Missouri in 1835 that explicitly carried the death penalty with the alternative of life imprisonment was "Crimes and Punishments," Article I, section 7, which states, "Every slave who shall, at any time, rebel or make insurrection, or shall enter into any agreement to rebel or make insurrection, or shall plot or conspire the death of any person, or to commit arson in furtherance of such conspiracy, and shall, by any overt act, attempt to accomplish such purpose, shall suffer death, or be punished by imprisonment in the penitentiary during life." Actually raising a slave rebellion or insurrection carried only the death penalty with no alternative punishment. "Crimes and Pun-

ishments," Article I, section 6. First-degree murder carried only the death penalty with no alternative punishment. "Crimes and Punishments," Article II, section 3. It is highly unlikely that the Missouri Legislature intended that there would be no statute of limitations only for a limited group of crimes committed by slaves, and a three-year statute of limitations for first-degree murder, or actually raising a slave rebellion, or for the various felonies that carried a potential penalty of up to life imprisonment. *See* "Practice and Proceedings in Criminal Court," Article IX, section 24. While the Missouri Legislature's intent in 1835 in enacting a statute is not the intent of the legislature in enacting a statute of limitations in 1969, it is instructive given the similarity of the language of the statutes. We further observe that if one were to follow Graham's logic and apply it to the present statutory language defining a class A felony in section 557.021.1(a), in order for a crime to be a class A felony, the authorized punishment for the crime would always have to include the death penalty.

Any person may be prosecuted, tried and punished for any offense punishable with death or by imprisonment in the penitentiary during life, at any time after the offense shall been committed.

This language is identical to that of section 541.190. While we are not bound by this case, it is instructive.

The State cites a number of cases for the proposition that a criminal statute that has a penalty with a minimum sentence of imprisonment in the penitentiary but no stated maximum sentence of imprisonment carries up to life imprisonment as a sentence, and also for the proposition that no statute of limitations applies to an "open-ended" criminal offense. *See State v. Bascue,* 485 S.W.2d 35 (Mo.1972); *State v. Palmer,* 306 S.W.2d 441 (Mo.1957); *Bray,* 246 S.W. 921; *State v. Swain,* 239 Mo. 723, 144 S.W. 427 (1912). Graham criticizes these cases by observing that the crimes in *Bascue, Palmer,* and *Swain* each had a possible sentence of death in addition to being "open-ended" and implicitly argues that they are not inconsistent with *Garrett* and are distinguishable from the case at hand, which does not carry a possible sentence of death. While it is correct that the crimes in those cases carried a potential penalty of death, this does not create a sufficient distinction given the plain language of section 541.190. Moreover, the offense in *Bray* did not carry the death penalty.

Graham also criticizes *Bascue, Palmer, Bray,* and *Swain* by noting that the Missouri Supreme Court did not provide any analysis of the issues relevant to this case, but merely stated the law. Graham also cites to two cases, *State v. Cook,* 463 S.W.2d 863 (Mo.1971) and *State v. Kammerich,* 550 S.W.2d 931 (Mo.App.1977), with criminal statutes having "open-ended" penalties in which the courts stated that the statute of limitations for each crime was three years under section 541.200. Neither of these cases relied on by Graham provides any analysis of the purportedly relevant issues. *Cook* involved a charge of assault with intent to do great bodily harm under section 559.180 and a claim of error that the information was fatally defective because it did not state the year that the offense was committed and did not establish that it took place within three years of the filing of the information. The Missouri Supreme Court stated that time was not of the essence for such an offense and that the information was not fatally defective, and in a footnote with no explanation or analysis stated that the statute of limitations for assault with intent to do great bodily harm was three years, citing section 541.200. In contrast, the Missouri Supreme Court in *Bascue,* 485 S.W.2d 35, decided after *Cook,* stated that there was no statute of limitations for the "open-ended" offense of statutory rape. Graham speculates as to the reasons that the Missouri Supreme Court reached two different results concerning statutes of limitations on two different "open-ended" statutes, neither of which is the statute at issue in the case before this Court. However well-reasoned or poorly-reasoned Graham's speculations may be, such speculation is not a tool for statutory construction, and we are not persuaded by it or by the citation to *Cook.*

In *Kammerich,* an appellate court addressed a charge of statutory rape, an "open-ended" statute, and a claim of error that the prosecution failed to show that he had committed the crime on the specific date alleged in the information. The appellate court stated that time was not of the essence for that offense, citing to *Palmer,* 306 S.W.2d 441, and noted that proof that the crime was committed during the period of the statute of limitations and prior to the charge is sufficient. *Kamme-*

*rich*, 550 S.W.2d at 932. The appellate court then stated without explanation that the statute of limitations for statutory rape is three years, citing to section 541.200. *Id. Kammerich*, however, failed to distinguish the Missouri Supreme Court's opinion in *Bascue*, 485 S.W.2d 35, which stated that there was no statute of limitations for statutory rape, and cited to no cases for its interpretation of the proper statute of limitations. We do not find it persuasive.

 We are mindful of the purposes of statutes of limitations, not the least of which are to protect individuals from having to defend themselves against charges where the passage of time may have obscured the facts and to minimize the threat of official punishment because of acts committed in the distant past. *See United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). But as the Supreme Court also observed, the possible prejudice that is inherent in any delay may also serve to weaken the prosecution's case. *Id.* at 322, 92 S.Ct. 455 at 464. Statutes of limitations "represent legislative assessments of relative interests of the state and the defendant in administering and receiving justice." *Id.* The legislature of Missouri made this assessment in plain and clear language in section 541.190. If the Missouri legislature decides that the relative interests of the state and criminal defendants need to be reassessed, it can do so and change the statutes of limitations. Point sustained.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.