## THE STATE v. LEE WOODS, Appellant.

### Division Two, June 3, 1918.

1. **EVIDENCE: At Former Trial: No Objection.** Where at the time certain portions of the transcript of the evidence at a former trial were offered by the State defendant made no objection, and when asked by the court if he desired to offer any part of the remainder of the transcript his counsel replied, "I don't want to offer any part of it," he is in no position on appeal to complain that the court refused to permit his counsel to read to the jury certain portions of the transcript of his testimony on the former trial.

2. ———: **Accidental Homicide: Self-Defense.** Where the defense is accidental homicide in scuffling for a knife, and there is no evidence of self-defense in the case, it is not error to exclude testimony to the effect that deceased had been in the habit of carrying a knife, since such evidence is not material to any issue involved.

3. ———: ———: ———: **Violent Character: Particular Acts.** Where the defense is accidental homicide, testimony that on a prior occasion deceased stabbed the defendant is not admissible. Even if self-defense is an issue and evidence as to the violent and dangerous character of deceased would therefore be admissible, particular acts of violence are not admissible to prove such character.

4. ———: **Motive: Suit for Divorce.** Testimony that a short time before the homicide of a wife she had instituted divorce proceedings against defendant is admissible to show motive for the killing.

5. ———: **Former Conviction.** In the trial of a defendant for murder the record of a justice of the peace showing the conviction for assault and battery of a person of the same name as that of defendant, without first requiring proof as to the identity of the person convicted, is not incompetent evidence. Identity of names is prima-facie proof of identity of person.

6. **INSTRUCTION: Defendant as Witness.** The court did not err in refusing to instruct the jury at defendant's request "that they have no right to disregard the testimony of the defendant on the ground alone that he is the defendant, and stands charged with the commission of a crime. The law presumes the defendant innocent until he is proven guilty, and allows him to testify in his own behalf, and the jury should fairly and impartially consider his testimony, together with all the other evidence in the case; and, if from all the evidence, the jury have any reasonable doubt as to the defendant's guilt, they should give him the benefit of the doubt and acquit him." Under the doctrine of State v. Finkelstein, 269 Mo. 612, such an instruction would be an improper comment upon the testimony of defendant.

Appeal from Buchanan Circuit Court.—*Hon. W. H. Utz,* Judge.

Affirmed.

*James C. Growney* for appellant.

*Frank W. McAllister,* Attorney-General, and *C. P. Le Mire,* Assistant Attorney-General, for respondent.

(1) There was substantial evidence on which to base the verdict. It finds the appellant guilty of murder in the first degree as charged in the information and assesses his punishment at life imprisonment in the penitentiary. It is sufficient. State v. Concelia. 250 Mo. 424; State v. Rumfelt, 228 Mo. 443; State v. Sharp, 233 Mo. 298. (2) The trial court permitted the State, over the objections and exceptions of appellant, to introduce in evidence questions and answers from the transcript of testimony of the accused at a former trial of the same case for the purpose of contradicting or impeaching the accused as a witness in his own behalf. Such evidence was admissible for the purpose of im-

peachment, hence the appellant's objections thereto were without merit. Underhill on Crim. Ev. (2 Ed.), secs. 65, 238; State v. Eastabam, 240 Mo. 248; State v. Carter, 259 Mo. 357. (3) Evidence of a prior assault upon the defendant by the deceased and that deceased was in the habit of carrying a pocket knife was properly refused. Had self-defense been pleaded this evidence might have been properly admitted, but self-defense is no issue in this case. The appellant relies on the plea of accidental killing. State v. Privett, 175 Mo. 207; State v. Edwards, 203 Mo. 528; State v. Fitzgerald, 130 Mo. 407; Kelley's Crim. Law and Proc. sec. 249; Underhill's Crim. Ev. (2 Ed.), secs. 324-5; 21 Cyc. 407. (4) The appellant also complains of the action of the trial court in permitting the State to offer in evidence, for the purpose of impeachment, the record of the conviction in a justice of the peace court of one Lee Woods of assault and battery. Under the rule established in this State identity of names is prima-facie evidence of identity of person, and said record was properly submitted to the jury. State v. Sovern, 225 Mo. 591; State v. Blitz, 171 Mo. 530; State v. Court, 125 S. W. 451; State v. McGuire, 87 Mo. 642; State v. Kelso, 76 Mo. 505; State v. Moore, 61 Mo. 276. (5) The trial court did not err in permitting the State to show that deceased had filed suit for divorce against the appellant just prior to the killing. This evidence had a tendency to show motive and therefore was competent. State v. Bobbett, 215 Mo. 10; State v. Gregory, 178 Mo. 48; Burns v. State, 57 Ind. 46-52. (6) Instruction E requested by the appellant was properly refused. It singles out the accused as a witness and comments on the weight to be attached to his testimony. State v. Finkelstein, 269 Mo. 612.

WILLIAMS, J.—Defendant was convicted of murder in the first degree in the circuit court of Buchanan County and was sentenced to life imprisonment. He has duly perfected an appeal to this court.

The evidence upon the part of the State tends to establish the following facts:

Defendant killed his wife about 1 a. m. July 15, 1916, at 2608 Delaware Street, St. Joseph, Missouri. Defendant and his wife, both colored, were united in marriage in September, 1915, and separated about March, 1916, the wife at that time going to the home of Mrs. Wilson, where she resided until the time of her death. On June 29, 1916, the deceased instituted a divorce suit in the circuit court of Buchanan county.

On the night of the tragedy the deceased, in company with other members of the Wilson household, attended a church festival, returning to the Wilson home about 12:30 a. m. Shortly thereafter defendant knocked at the door of the Wilson home and asked to see his wife. She stepped out on the porch and after conversing with defendant for a few minutes both returned into the house and continued their conversation in the front room. Mrs. Wilson and her daughter were in the dining room immediately adjoining the front room. A visiting colored minister had retired for the night in another part of the house.

Shortly after defendant and his wife came into the house scuffling was heard, and the deceased, with her hand to her throat and blood streaming therefrom, immediately rushed into the dining room, in the presence of Mrs. Wilson and her daughter. Mrs. Wilson testified that defendant pursued his wife, grabbed her, threw her on the cot and cut her throat with a knife. The daughter corroborates the testimony of her mother, except that she did not see the defendant use the knife. Defendant went back into the front room, and Mrs. Wilson's daughter accosted him, saying, "Oh! Lee! What did you do that for?" Defendant made no reply, but departed from the house leaving his hat lying under the table. The wife died in a few minutes.

The coroner arrived about 1:10 a. m. and found the wife dead, with a cut on her neck and throat extending from ear to ear. The cut severed the "carotid artery and the jugular vein." There was also an

additional small scratch on her throat. The main wound was jagged and had the appearance of being accomplished with one stroke of the knife.

About five o'clock a. m. on the morning of the tragedy a police officer, having read the account of the killing in the newspaper, immediately went to the house where defendant was rooming. Looking in at the window, the police officer saw defendant asleep and awakened him by rapping on the window pane. Defendant arose and permitted the policeman to enter. In answer to the questions of the policeman the defendant admitted that he had been out to call on his wife that morning and that they had had some trouble and he thought he had cut her on the shoulder. The bloodstained knife with which the cutting was done was lying upon a table in the room; one of defendant's hands had a slight cut across the palm, which had been bandaged by the defendant; the policeman told the defendant that his wife was dead, but the defendant appeared to be unable to believe it. On direct examination the police officer testified that defendant said that the knife in question was his knife, but upon cross-examination the witness stated that he was not positive that the defendant had made that statement. The defendant was then placed under arrest and taken to the jail.

The colored minister testified that he saw the defendant sitting on a platform in front of the church where the church festival was being held about nine p. m. on the night in question. A justice of the peace record, showing one Lee Woods to have been convicted of assault and battery in the year 1914, was introduced in evidence.

The evidence upon the part of the defense tends to establish the following facts:

The reputation of the deceased for "peace, quietude and morality" was bad. The reputation of defendant as a peaceful, law-abiding citizen was good.

Defendant in his own behalf testified that after his wife went to live with Mrs. Wilson she visited his

house one or two days each week; that she was vicious and quarrelsome, causing their separation; that about 10:30 on the night in question he went to the Wilson home to see his wife; that prior thereto he had agreed with his wife to either let her return to his home or to pay her expenses for a visit to her mother in Iowa; he found no one at home when he first arrived, and waited until midnight, at which time Mrs. Wilson and the members of the Wilson household, including the visiting minister and an escort of Miss Wilson, returned from the church, but his wife was not with them. He was informed by them she had gone to the home of Mrs. Walters; defendant in company with Fred Barnes walked to a near-by cigar store for cigars and procured change for a ten-dollar bill; defendant then went to the Walter's home and inquired for his wife; on learning that she had gone to the Wilson home, he also returned to the Wilson home, arriving there about 12:30 a. m.; as he approached the house he looked through the window and saw his wife and Conser Walters standing in the front room; he knocked on the door, asked his wife to come out, and there told her that since she was going with Mr. Walters and not living right he was not going to take her back or give her money to visit her mother. They then went into the house, and continued the conversation. His wife asked him to give her seven dollars to make the trip to Iowa; she opened her purse in order to show him that she had no money. After she opened the purse she took a knife therefrom and attempted to cut defendant with it; that he grabbed her hand and they struggled for possession of the knife; that he finally got hold of her wrist, reaching over her shoulder from behind her, and pulled her hand up over her shoulder until she dropped the knife; that he then released his wife, and she rushed into the adjoining dining-room and lay down on the cot; that he walked to the dining-room door and saw his wife on the cot, and saw some blood on her shoulder and thought it had come from his hand, which had been

cut in the struggle; that as he went to the dining-room door Miss Wilson said, ''Don't you see me undressed; what in the world is the matter with you? I am ashamed of you.'' He thereupon left the house, went to his home, bandaged his injured hand and went to sleep. He denied that he left his hat at the Wilson home or that he was at the church on the night in question, and denies that he intentionally struck his wife with the knife. He also denied that he was ever convicted of assault and battery or that he had ever threatened to cut his wife's throat.

Appellant has not favored us with a brief. We will discuss the points raised by the motion for a new trial.

I.   A mere reading of the foregoing statement of facts will at once disclose that appellant's contention that the verdict is not supported by the evidence must be disallowed.

II.   The further point is made that the court erred in refusing to permit counsel for defendant to read to the jury pages 3, 4, and 5 of the transcript of defendant's testimony given upon a former trial, and **Evidence at Former Trial.** also erred in permitting counsel for the State to read to the jury any portion of said transcript.

Concerning this point it is sufficient to say that at the time certain marked portions of this transcript were offered in evidence by the State the defendant made no objection thereto, and when asked by the court if he, defendant, desired to offer any part of the remainder of the transcript the defendant's counsel replied, ''I don't want to offer any part of it.''

It further appears that the portion which defendant's counsel desired to read to the jury was never offered in evidence. There is therefore no basis for an assignment of error in this regard.

III.   It is contended the court erred in excluding defendant's testimony to the effect that the deceased had

been in the habit of carrying a knife. The defense was accidental homicide. The issue of self-defense is not in the case. Such evidence was, therefore, not material to any issue involved. Error was not committed by its exclusion. [State v. Fitzgerald, 130 Mo. 407, l. c. 434.]

*Deceased's Violent Character.*

Neither did the court err in excluding the testimony of defendant that on a prior occasion the deceased stabbed the defendant. Even where self-defense is an issue and evidence as to the violent and dangerous character of the deceased is admissible, particular acts of violence are not admissible to prove such character. [State v. Jones, 134 Mo. 254, l. c. 262; Kelly's Criminal Law & Practise (3 Ed.), par. 249.]

IV. The court did not err in permitting the State to prove that deceased had instituted divorce proceedings against defendant a short time before the killing. This evidence was admissible on the theory that it tended to show a motive for the killing. [Wharton on Homicide (3 Ed.), p. 926.]

*Motive.*

Neither did the court err in admitting the justice of the peace record showing the conviction of one Lee Woods without first requiring proof as to the identity of the person convicted. The identity of names was prima-facie proof that it was the same person. [State v. McGuire, 87 Mo. 642.]

*Former Conviction.*

V. No matter of error is properly saved concerning the instructions which were given by the court.

The only one of defendant's refused instructions which had not already been covered by the instructions given was Instruction E, which is as follows:

"The court instructs the jury that they have no right to disregard the testimony of the defendant on the ground alone that he is the defendant, and stands charged with the commission of the crime. The law presumes the defendant innocent until he is proven guilty, and the law allows him to testify in his own behalf, and the jury should fairly and impartially consider his tes-

timony, together with all the other evidence in the case; and if, from all the evidence, the jury have any reasonable doubt as to the defendant's guilt, they should give him the benefit of the doubt, and acquit him."

Under the doctrine of the case of State v. Finkelstein, 269 Mo. 612, the above instruction was an improper comment upon the testimony of the defendant, and its refusal did not constitute error.

The judgment is affirmed. All concur.