**STATE of Missouri, Respondent,**

v.

**Delbert Leroy OLDHAM, Appellant.**

**No. KCD 28406.**

Missouri Court of Appeals,
Kansas City District.

Jan. 31, 1977.

James R. Bickel, Nevada, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

The jury convicted defendant of second degree burglary and burglarious stealing but was unable to agree upon punishment. The trial court therefore sentenced defendant to four years imprisonment on each charge with the sentences running concurrently, from which defendant appeals.

The record yields the following facts. Mrs. Sadie Ketner, a widow, owned a home in Nevada, Missouri, which was broken into on June 25–June 26, 1975. Mrs. Ketner was in Florida at the time of the burglary, having left her home on June 15, 1975. Two of her neighbors testified that on June 26, 1975, they discovered that a rear window pane in Mrs. Ketner's house was broken. They saw a storm window and screen lying against the rear of her house, broken glass was in the yard, and they found the front door of the house open.

Mrs. Ketner testified that when she left for Florida all her storm windows were secured on her house, and her front door was locked. When she returned from Florida on July 8, 1975, she found missing from her home a flashlight, two pairs of binoculars, two radios, her deceased husband's billfold, several rings, an electric fan, and personal checks.

The police returned to Mrs. Ketner most of the above property which she positively identified as her own and as having been in

her home when she left for Florida. The police found the property in the trunk of a car registered to a Phil Gilbert, and to which they were directed by Nadine Gilbert. When Nadine Gilbert took the police to the car, she was in the custody of the police for investigation of the burglary of the Ketner house.

Defendant was arrested by Vernon County Deputy Sheriff Leon Dowdy on June 28, 1975, at a motel near Nevada, Missouri. Police Officer Larry Moore of Nevada, Missouri, accompanied Dowdy to the motel. While there, Dowdy also arrested Phil Gilbert. At the patrol car in the motel parking lot, the officers read the arrestees their Miranda rights. Officer Dowdy testified that Phil Gilbert and defendant talked between themselves while they were being driven to the Nevada Police Station. Gilbert indicated to the arresting officers that he and defendant shared the motel room where defendant was arrested.

Officer Moore interrogated defendant while at the police station. He testified that before beginning questioning he again read to the defendant his Miranda rights and that defendant indicated that he understood those rights. The officer stated that the defendant did not indicate to him that he wished to speak to an attorney. Officer Moore also filled out part of a "Waiver Form" which states that the signer of the form has read his rights; that he understands them; that he is willing to speak to the police and answer questions; that he does not desire assistance of counsel; and that no threats or coercion has been used against him. Defendant signed the waiver form. Officer Moore interrogated him after he signed the form.

Initially the defendant denied having anything to do with the burglary. Officer Moore told the defendant that blood had been found near the broken window at the Ketner house. Officer Moore testified that he found a small cut near the wrist of the defendant. Officer Moore told defendant that fingerprints had been taken at the Ketner house. Officer Moore testified that he said to the defendant, "Most likely, if you are the one that done it, it will come back to you." The defendant finally told Officer Moore verbally that he left Kansas City by car on Wednesday night of that week with Phil Gilbert, Nadine Gilbert and Rosella Grube; that the foursome arrived in Nevada after much drinking and went to a park; that while there in the park defendant told the others that he would break into the house across the street; and that he then went across the street and broke into the house, taking items from it. Mrs. Ketner's house is across a street from a park. Defendant also told the officer that he broke into the house while drunk and that the cut on his wrist was from the burglary; that he took personal checks from a red box in the back bedroom of the house; and he also described to Moore several other items which he took from the house. These items, also described on his written statement, match identically the items which the police recovered from Phil Gilbert's car and which items Mrs. Ketner identified as hers. The written statement by defendant is virtually identical to the description of Moore of the verbal statements made by defendant. The defendant wrote the statement immediately after making the verbal statement.

Prior to trial, defendant moved the court to suppress both the written and verbal statements. At the hearing on the motion to suppress, defendant testified that before he made any statement he requested from Officer Dowdy assistance of counsel, but Dowdy responded that he could not obtain an attorney for the defendant. He further stated that he did not read "the fine print" on the form on which he wrote the confession. The only other witness at the hearing on the motion was Officer Moore, who testified to the facts of the interrogation as outlined above. After hearing this evidence, the court overruled the motion, stating: "The Court feels that the State has sustained its burden of proof as to the voluntariness of the statement."

I.

Defendant first complains that the trial court erred in overruling his motion to sup-

press, contending that his statements were given after he requested an attorney and had been denied the opportunity to consult with counsel. In support of this contention, defendant relies upon his own testimony given at the hearing on the motion to suppress in which he testified that he requested assistance of counsel from Officer Dowdy who stated that an attorney could not be appointed at that time.

■ Defendant's testimony in this respect could properly be considered by the trial court together with State's Exhibit No. 9, a signed Waiver of Rights, in which defendant specifically stated, "I do not want a lawyer at this time." In view of that signed statement given immediately before Officer Moore took defendant's statement and just after defendant claims he asked Officer Dowdy for assistance of a lawyer, the trial court could reasonably disbelieve defendant's testimony to the effect that he asked Dowdy for legal help. The court's ruling on the motion to suppress, that "the State has sustained its burden of proof as to the voluntariness of the statement," is therefore supported by the evidence taken at that time.

■ Moreover, before defendant's statement was introduced in evidence, Officer Dowdy took the stand at the jury trial and in his testimony he flatly denied that any request to him had ever been made by defendant for legal assistance. When the court ruled on defendant's trial objection to admission of his statement, Dowdy's testimony was before the court and further supported the court's ruling on that objection. See *State v. Howell,* 524 S.W.2d 11, 19 (Mo. banc 1975). The trial court's belief in credibility of witnesses is binding upon this court. *State v. Alewine,* 474 S.W.2d 848 (Mo.1971); *State v. Hunter,* 456 S.W.2d 314 (Mo.1970).

A part of the argument portion of defendant's brief varies from the point as stated to a degree making it doubtful whether this additional argument is properly preserved for attention. The doubt in this respect will be resolved by considering on the merits this additional argument

which purports to raise a constitutional issue, thereby eliminating any question of "plain error." The additional argument is put in defendant's brief as follows:

"The Court's refusal to consider the testimony previously given by appellant and requiring a repetition of this testimony by appellant at trial, put appellant in an impossible position. The Court stated that if appellant would testify to those facts, the Court would sustain the objection to the introduction of the statements. Thus, for appellant to be able to invoke his constitutional right to counsel, prior to questioning, he would have to give up his equally important constitutional right against self-incrimination by testifying at the trial, at which time he would be subject to cross examination by the State. Appellant submits that it is reversible error to coerce a defendant to choose between one of two constitutionally protected rights."

■ Defendant's argument is faulty on two grounds. In the first place, the trial court did not refuse to consider the testimony previously given. With respect to this matter the record shows the following colloquy, which represents the sum total of what defendant relies upon:

"MR. BICKEL: In requesting counsel, further interrogation should have then ceased and failing in that, his constitutional rights were violated.

THE COURT: Is there going to be testimony here—

MR. BICKEL: I am assuming that the hearing Monday is a part of the overall court record, as far as my objection is concerned.

THE COURT: *All right.*" (emphasis added)

Defendant then argued to the court that if the police refused to obtain counsel at the request of a defendant any subsequent conviction must be reversed. In response, the court said:

"THE COURT: All right. If the testimony discloses those facts, of course, the objection will be sustained. At this point,

of course, there is no testimony to that effect.

MR. BICKEL: You are not going to consider the testimony of the defendant at the hearing on the Motion to Suppress.

MR. DARNOLD: That motion has already been ruled on. Of course he can object to me trying to introduce it or unless there is some other evidence. That hearing has been decided."

Considered as a whole, the foregoing colloquy shows an agreement by the court to consider defendant's former testimony rather than any rejection of it. A fair interpretation of the court's remarks is that up to that point (at which time Officer Dowdy had already testified in opposition to defendant's testimony), there was no persuasive evidence to show that defendant had ever requested counsel prior to making his incriminating statement. The court in effect was telling defendant that he had so far failed to show such a fact, but that if he were able to produce any further evidence which would show that to be true, then the court was still willing to suppress the statement. If defendant understood the colloquy differently, he had an obligation to make specific objection and submit an offer of proof. *State v. Crow,* 486 S.W.2d 248, 257 (Mo.1972); *State v. Woods,* 274 Mo. 610, 204 S.W. 21 (1918). Defendant took neither of those steps.

■ A second and independent reason why defendant's argument fails is that any requirement that he put on his testimony at trial on the merits, if he wanted to have it considered, would not have placed him in any dilemma. In order to make out the existence of a constitutional dilemma, defendant cites and relies upon *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In that case a defendant gave testimony on an unsuccessful preliminary motion to suppress. Then in the trial on the merits, the government undertook to use that testimony to prove one of the elements of the government's case in chief against the defendant. The *Simmons* opinion held the testimony on the preliminary motion could not be so used. That opinion, however, is not in point here. In this case, the State made no effort to use the testimony given by defendant on his preliminary motion. It is defendant, not the State, who seeks use of his testimony. Moreover, unlike the situation in *Simmons,* defendant's testimony here in the preliminary hearing did not tend to prove any element of the crime charged and therefore was not incriminating. The essential part of defendant's testimony on the preliminary motion was simply that he had requested a lawyer and had been denied that right. Repetition of that testimony at the jury trial, if defendant desired to present it, would have in no way prejudiced the defense on the merits.

## II.

■ Defendant next contends that the court erred in overruling his motion for directed verdict of acquittal at the close of the evidence, because the State failed to introduce sufficient admissible evidence to convict defendant of the crime charged. This contention is without merit.

■ In reviewing a denial of a motion for judgment of acquittal the evidence will be viewed in the light most favorable to the State, and the State is entitled to all reasonable inferences from the evidence. *State v. Thomas,* 529 S.W.2d 379, 383 (Mo. 1975). The State's evidence must be accepted as true and all evidence and inferences to the contrary must be disregarded. *State v. Cox,* 527 S.W.2d 448 (Mo.App.1975); *State v. Sanderson,* 528 S.W.2d 527 (Mo. App.1975); *State v. Gideon,* 453 S.W.2d 938, 939 (Mo.1970).

In his statement to the police, defendant admitted that he and Phil Gilbert, Nadine Gilbert, and Rosella Grube went to a park in Nevada, Missouri, after traveling from Kansas City, Missouri, on June 25, 1975. The defendant admitted that he broke into a house located across from the park and took certain items from that house. The evidence is uncontroverted that Mrs. Ketner's house is located across from a park in Nevada, Missouri. It is also clear that her

home was broken into and certain items were missing which were later found in Gilbert's car and which items Mrs. Ketner positively identified as belonging to her and as missing from her home. Phil Gilbert and defendant shared a room at the motel where both were arrested. The arresting officers testified that Gilbert and the defendant spoke with each other while being taken to the Nevada police station. Blood was discovered on the broken window at Mrs. Ketner's house and while at the police station Officer Moore found a recent cut on defendant's wrist. Accepting the above evidence as true and drawing favorable inferences to the verdict from the above evidence, the State made a submissible case.

### III.

The defendant's final contention is that the court erred during allocution by considering information from a "Hoover Rap Sheet," because some of the information on the sheet was of arrests which did not result in convictions, and therefore the court was prejudiced to impose a heavier sentence than was proper.

The court did consider what is known as a "Hoover Rap Sheet," which contained information regarding previous criminal charges against the defendant some of which resulted in conviction and some of which resulted in dismissal. The "Sheet" also does not make clear whether one particular conviction was a felony or a misdemeanor conviction. The defendant complains that the Hoover Rap Sheet was unsworn, uncertified as a court record, and unauthenticated. He says in his brief that it contained evidence of a burglary charge against the defendant dismissed by the State. He states that it contained information of a suspended sentence for which no violation was shown. To summarize his contention, he reasons that the court was improperly influenced to give a heavier sentence by this uncertified and irrelevant information.

It must be noted that defendant in no way objected to the court's consideration of the Hoover Rap Sheet, nor did he at any time ever claim that the information shown thereon was in any way false. Failing this, defendant preserved nothing for appellate review. *State v. Perryman,* 520 S.W.2d 126 (Mo.App.1975); *Griffith v. State,* 504 S.W.2d 324 (Mo.App.1974).

In any event, the trial court was entitled to consider this data and committed no error in doing so. Rule 27.07(b); *State v. Hawkins,* 491 S.W.2d 342 (Mo.1973); *State v. Jackson,* 476 S.W.2d 540 (Mo.1972); *State v. Cline,* 452 S.W.2d 190, 195 (Mo.1970).

Affirmed.

All concur.