Raymond Dale NEAL, Appellant,

v.

STATE of Missouri, Respondent.

No. 13117.

Missouri Court of Appeals,
Southern District,
Division One.

April 3, 1984.

Motion for Rehearing or Transfer Denied
April 16, 1984.

Raymond Dale Neal, pro se.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson, for respondent.

PER CURIAM.

Appellant ("Neal") appeals from a judgment denying his motion under Rule 27.26 [1] to vacate his conviction of selling marihuana, § 195.020, RSMo 1978, for which he was sentenced to 45 years' imprisonment.

The conviction—a result of trial by jury—was affirmed on direct appeal. *State v. Neal,* 624 S.W.2d 182 (Mo.App. 1981).

In the instant appeal, Neal briefs seven points. As appears *infra,* we are unable to rule on one of them (point IV) because of the lack of a finding by the trial court on an essential issue. This necessitates remand for that limited purpose. *Hamilton v. State,* 490 S.W.2d 363, 364[1] (Mo.App. 1973). In order to narrow the issues on remand, we dispose of the other six points on this appeal.

---

**1.** Rule references are to Missouri Rules of Criminal Procedure.

Four of the six (I, II, III and V) belong in the category of trial error. There is no apparent reason why they could not have been decided on direct appeal, had they been preserved for review. None of the four, however, appeared in the motion for new trial, and none were briefed, either as plain error [2] or otherwise, on direct appeal. Were they presented to us now as mere trial errors, they would not be cognizable. *Garrett v. State*, 486 S.W.2d 272, 273[2] (Mo.1972); *Nicolosi v. State*, 632 S.W.2d 260, 261[2] (Mo.App.1981).

However, Neal, obviously mindful of Rule 27.26(b)(3),[3] asserts that each of the assigned errors in those four points violated one or more rights guaranteed him by sundry amendments to the Constitution of the United States, thus ostensibly qualifying them for consideration here.

We note, though, that the Supreme Court of Missouri has declined to review trial errors of alleged constitutional dimension under Rule 27.26 in certain instances where, by reason of procedural default, the issue was not preserved for review on direct appeal. In *Schleicher v. State*, 483 S.W.2d 393 (Mo. banc 1972), a contention that the movant's fingerprints were inadmissible because they were obtained as a result of his alleged unlawful arrest was held not reviewable where no motion to suppress was filed, no objection was made at trial, and the point was not mentioned in the motion for new trial or briefed on direct appeal. In *Fields v. State*, 468 S.W.2d 31 (Mo.1971), a contention that certain State's evidence was inadmissible because it was obtained by unlawful search and seizure was held not reviewable where the movant filed no motion to suppress, made no objection on constitutional grounds when the evidence was offered at trial, and failed to mention the point in his motion for new trial.

The Western District of this Court took the same approach in *Benson v. State*, 611 S.W.2d 538 (Mo.App.1980), saying it is settled law in Missouri that in our post-conviction relief practice under Rule 27.26, a procedural default bars review of even a constitutional claim. *Id.* at 541[3]. There, the movant had been convicted in a jury trial during the period between *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) and *State v. Duren*, 556 S.W.2d 11 (Mo. banc 1977). He failed to make a timely objection to the venire at trial, then later sought relief under Rule 27.26 on the ground that the panel was constitutionally defective by reason of underrepresentation of women. *Benson* held that the absence of a timely objection precluded consideration of the issue. *Id.* at 542[4].

*Schleicher, Fields* and *Benson* are in harmony with the principle that to preserve a constitutional issue for appellate review in Missouri, it must be raised at the earliest time consistent with good pleading and orderly procedure, and must be kept alive during the course of the proceedings. *State v. Wickizer*, 583 S.W.2d 519, 523[4] (Mo. banc 1979); *State v. Flynn*, 519 S.W.2d 10, 12[3] (Mo.1975).

As noted earlier, none of the issues in points I, II, III and V were preserved in Neal's motion for new trial or briefed on direct appeal. Thus, even if they present issues of constitutional magnitude, it seems Neal has waited too long to assert them.

We recognize, however, that the extent to which a procedural default will bar collateral attack on a state criminal conviction, when the attack is based on federal constitutional grounds, is still a developing area of the law, though the trend is unmistakably toward denying review. See *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Having carefully considered the current posture of the

---

**2.** Rule 30.20.

**3.** Rule 27.26(b)(3) provides, in pertinent part: "Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal."

law on the subject, and having weighed the fact that Neal's sentence is 45 years, we have concluded that justice is better served in this particular case by reviewing points I, II, III and V for merit, rather than rejecting them outright on procedural grounds. We do so *ex gratia,* being unpersuaded that review on the merits is compelled.

As Neal does not rely on any provision of the Constitution of Missouri, all constitutional amendments mentioned herein pertain to the Constitution of the United States.

The main witness against Neal at trial was Miles Copher, who testified he bought 10 pounds of marihuana from Neal on Sunday, February 10, 1980, in Jasper County. Copher explained that he and his wife smoked three cigarettes from the marihuana, and that he replaced what they smoked with other marihuana he already had. According to Copher, he sold the same 10 pounds to Leo Owens the next day, February 11.

Copher was arrested two days later, February 13, in a police "undercover operation." Seeking "leniency," Copher decided to "become an informant," and, on February 15, 1980, told authorities about buying the marihuana from Neal five days earlier.

Copher testified at Neal's trial pursuant to a plea bargain.[4]

■ Neal asserts in point I that his conviction was obtained in violation of his constitutional rights under Amendments 5, 6 and 14, in that Copher, an "admitted drug dealer," destroyed or transferred the alleged marihuana, thereby depriving Neal of his rights of cross-examination, confrontation, and "compulsory process," and his right to test the alleged marihuana.

There was, of course, no denial of confrontation or cross-examination of Copher. The intendment of the point, as we understand it, is that because the alleged marihuana was never in the hands of law enforcement authorities, there was no opportunity to subject it to laboratory analysis, either by the State or the defense, and no means of presenting, or refuting, any scientific testimony.

Proof that the substance was marihuana rested on Copher's testimony. Because of Copher's familiarity and experience with marihuana, the trial court, over Neal's objection, allowed Copher to express his opinion that the substance he bought from Neal was marihuana. This was assigned as error on direct appeal, but ruled adversely to Neal. *Neal,* 624 S.W.2d at 183–84[1–4].

In support of his attack here, Neal cites four federal cases.[5] All are inapposite. In those cases, the prosecuting authorities withheld or destroyed physical evidence, statements, or reports of experts that might have proved helpful to the defense. That did not occur here. Copher was not an agent of, or informant for, the State when he bought the marihuana from Neal and sold it to Owens. Neal does not suggest there was any way for the State to have retrieved the marihuana when the transactions came to the attention of the authorities, and nothing in the record indicates the State could have done so.

Neal also cites two Missouri cases in support of Point I[6] but neither is pertinent. We find no merit, constitutional or otherwise, in point I.

In point II, Neal asserts his conviction was based on the uncorroborated testimony of a "co-conspirator" (Copher), in violation of Amendments 5 and 14. He relies on three cases,[7] none of which apply.

---

4. Footnote 10, *infra.*

5. *Galloway v. Brewer,* 525 F.2d 369 (8th Cir. 1975); *United States v. Stabler,* 490 F.2d 345 (8th Cir.1974); *Wilkinson v. Ellis,* 484 F.Supp. 1072 (E.D.Pa.1980); *Davis v. Pitchess,* 388 F.Supp. 105 (C.D.Cal.1974), *aff'd,* 518 F.2d 141 (9th Cir.1974), *rev'd,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975).

6. *Matter of Bear,* 578 S.W.2d 928 (Mo. banc 1979); *State v. Brooks,* 513 S.W.2d 168 (Mo.App. 1973).

7. *Galloway* and *Stabler,* footnote 5, *supra,* and *Brooks,* footnote 6, *supra.*

In Missouri, a defendant may be convicted upon the uncorroborated testimony of an accomplice,[8] *State v. Lang*, 515 S.W.2d 507, 509[1] (Mo.1974), unless that testimony is so lacking in probative force as to preclude it from constituting substantial evidence, *State v. Dick*, 636 S.W.2d 425, 427[6] (Mo.App.1982). We have studied Copher's trial testimony, and do not find it so lacking in probative force as to preclude it from constituting substantial evidence. Moreover, Copher's testimony was buttressed by his wife. She testified that on the Sunday in question, Neal, accompanied by his wife, carried a laundry basket "with some clothes on top" into the Copher home. Copher and Neal went to a "back room," taking the basket with them. After Neal and his wife departed, Mrs. Copher went to the back room and saw 10 pounds of marihuana that had not been there before. Point II is denied.

Neal contends in point III that his conviction was based on insufficient evidence, in violation of Amendments 5, 6 and 14. The gist of the point, as we read it, is that Copher was not a credible witness, and his testimony was uncorroborated. The only authority Neal cites in support of point III is *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which holds, as we understand it, that in a challenge to a state criminal conviction brought in a federal court under 28 U.S.C. § 2254, if the settled procedural requisites for such a claim have otherwise been satisfied, the petitioner is entitled to habeas corpus relief if the federal judge finds that upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. 443 U.S. at 323–25, 99 S.Ct. at 2791–92, 61 L.Ed.2d at 576–77. Neal fails to explain how that principle applies to the evidence on which he was convicted.

In assessing the sufficiency of the evidence in Neal's case, we must accept as true all evidence and inferences that tend to support the verdict, and disregard all evidence and inferences to the contrary; our inquiry is limited to whether the evidence, viewed in the light most favorable to the State, is sufficient to support the verdict. *State v. Bolder*, 635 S.W.2d 673, 679[1] (Mo. banc 1982). So measured, we find Copher's testimony, together with that of his wife, sufficient to support the verdict. Point III is denied.

Point V says the trial court erred in failing to instruct the jury on the credibility of an admitted "drug user," thereby violating Neal's rights under Amendments 6 and 14. The four cases Neal cites in support of this point [9] are not germane. All involved prosecutions in the federal courts for violation of federal law, and none was decided on constitutional grounds.

In Neal's trial, the court instructed the jury on credibility of witnesses. MAI–CR 2d 2.01. It would have been error to give any other instruction on credibility. MAI–CR 2d 2.01, Note on Use 2; *Lang*, 515 S.W.2d at 510–11[4]. We reject point V.

Evidence pertinent to the three remaining points (IV, VI and VII) was presented at a hearing per Rule 27.26(e).

Point VI argues that the State, at trial, knowingly used perjured testimony on a material issue, in violation of Amendments 5 and 14. Specifically, Neal contends that Copher's trial testimony was in conflict with earlier testimony Copher gave before the Grand Jury and on deposition, in that Copher testified on those occasions that he did not smoke any of the marihuana he bought from Neal.

---

**8.** In Missouri, an accomplice is one who knowingly, voluntarily, and with a common interest with others, participates in the commission of a crime either as a principal or as an accessory before the fact. *State v. Lewis*, 539 S.W.2d 451, 453[2] (Mo.App.1975). We infer that the term "co-conspirator" employed by Neal in point II is meant to be synonymous with accomplice.

**9.** *United States v. Collins*, 472 F.2d 1017 (5th Cir.1972); *United States v. Kinnard*, 465 F.2d 566 (D.C.Cir.1972); *United States v. Griffin*, 382 F.2d 823 (6th Cir.1967); *Fletcher v. United States*, 158 F.2d 321 (D.C.Cir.1946).

At trial, Copher was asked whether he had testified on deposition that instead of "skimming a little off the top" of the marihuana he bought from Neal, he took the money he made from the sale of the marihuana and bought other marihuana. Copher admitted so testifying on deposition. He explained, however, that he meant he replaced the marihuana he smoked from the 10 pounds sold him by Neal with other marihuana already in his possession.

Copher testified at the 27.26 hearing that his testimony before the Grand Jury was true, as was his deposition testimony and his testimony at Neal's trial.

The State was represented at Neal's trial by L. Thomas Elliston, at that time the Prosecuting Attorney of Jasper County. At the 27.26 hearing, Elliston testified he had no reason to believe Copher committed perjury at Neal's trial. To the contrary, the plea bargain with Copher required that he tell the truth.[10]

In considering point VI, we note that variances in a witness' testimony at two different proceedings are not perjurious *per se.* *Reynolds v. State*, 575 S.W.2d 915, 916 (Mo.App.1978); *Tyler v. State*, 501 S.W.2d 189, 191[4] (Mo.App.1973). In order to obtain relief under point VI, it was Neal's burden to prove that Copher's testimony at Neal's trial was deliberately false and known to be false, that the State used Copher's testimony knowing it to be false, and that Neal's conviction was obtained on account of the perjured testimony. *Reynolds*, 575 S.W.2d at 916; *Tyler*, 501 S.W.2d at 191.

The judge who presided at the 27.26 hearing made findings of fact, one of which [11] was that the State did not knowingly use perjured testimony, and Neal's constitutional rights were not violated.

■■■ Our review under Rule 27.26 is limited to a determination whether the findings, conclusions, and judgment of the trial court are clearly erroneous. Rule 27.26(j); *Charles v. State*, 612 S.W.2d 409, 411–12[3] (Mo.App.1981). On the record before us, the trial court's finding that the State did not knowingly use perjured testimony is not clearly erroneous. Point VI is, accordingly, denied.

In point VII, Neal maintains that the judge who sentenced him considered "untried offenses and hearsay," contrary to Amendments 5 and 14. The judge, rather than the jury, assessed Neal's sentence per § 195.200.1(5), RSMo 1978, the State having alleged, and the judge having found, that Neal had previously been convicted in the United States District Court, Western District of Missouri, of a felony violation of the laws of the United States relating to controlled substances, to-wit: distributing amphetamine.

At trial, Neal was represented by two attorneys: R_____ and his associate, G_____. At the 27.26 hearing, G_____ testified that prior to sentencing, he heard a rumor that Neal "had a contract out" to have Elliston and Copher killed. Long after the sentencing, G_____ heard a rumor that the judge took the contract-killing rumor into consideration in assessing Neal's sentence. At time of sentencing, G_____ had no reason to believe the judge knew of the contract-killing rumor.

The judge who assessed the sentence testified at the 27.26 hearing. He related that *after* the sentencing, he heard discussion among lawyers and "law enforcement people" that Neal had a contract out on Copher and Elliston. Asked whether he considered the rumor in assessing Neal's sentence, the judge explained he did not, inasmuch as he was unaware of the rumor at that time. The judge's testimony on this point was unrefuted.

The foregoing, as we understand it, is the basis of the "hearsay" complaint in point VII. The "untried offenses" com-

---

**10.** Under the bargain, as we understand it, Copher was to plead guilty to three charges of sale of a controlled substance, one in Jasper County and two in Newton County. He was to serve one year's imprisonment in the county jail, then be placed on probation for five years. All sentences were to run concurrently.

**11.** Number 9.

plaint in that point is evidently based on a statement Elliston made after the verdict was returned. Elliston told the court there were "many other charges pending" against Neal. Specifically, Elliston referred to a burglary, and also recited that there were "literally van loads of stolen property" recovered from Neal's house pursuant to a search warrant. Elliston also referred to a 1975 burglary which was "dropped" because Neal "got federal time." No objection was made to Elliston's comments. Sentencing did not occur at the time of those remarks; instead, a presentence investigation was ordered, and sentencing was deferred until the investigation was completed.

At the time the 45-year sentence was assessed, Neal was also sentenced, by the same judge, on two other cases. One was a "burglary and stealing," for which Neal was sentenced to "twelve and twelve concurrent." The other was "receiving stolen property," for which Neal received 5 years, "concurrent." Simultaneously, eight other felony cases against Neal were dismissed, all of this being done pursuant to a plea bargain.

It is evident from these circumstances that at the time the judge assessed the 45-year sentence, he was necessarily aware of the 10 other cases against Neal that were disposed of concurrently therewith. Consequently, Elliston's remarks about "other charges pending" at the time the verdict was returned did not inform the judge of anything he would not have learned at the sentencing.

■ The judge who presided at the 27.-26 hearing found that Neal was properly sentenced as a persistent offender and that the trial court properly considered the matters presented in imposing sentence, including pending charges which were dismissed as a result of plea bargains, and that Neal was not deprived of due process or constitutional rights.[12] These findings are not clearly erroneous. *State v. Oldham*, 546 S.W.2d 766, 771[7] (Mo.App.1977); *State v. Hawkins*, 491 S.W.2d 342, 343[3] (Mo.1973). We reject point VII.

We turn now to point IV. There, Neal alleges he was denied effective assistance of counsel at trial, in violation of Amendments 6 and 14. He lists several complaints, the most serious of which is that attorney R_____[13] had a conflict of interest. Specifically, Neal asserts that R_____ "was being investigated for dealing in drugs, implicated by the very witness that was testifying against the Appellant."

The evidentiary basis for this allegation is found in the information Copher gave the authorities on February 15, 1980. Copher disclosed that in early 1979, he received a call from a man, Mike, asking if he (Copher) had any cocaine. Copher said he did, and Mike stated he wanted to buy it. According to Copher, he took a quarter ounce of cocaine and met Mike, Mike's wife, and R_____ at a motel. R_____ placed a finger in the cocaine, and then in his mouth, and said, "Yes, that is coke." Copher related that R_____ gave Mike a check. Copher took Mike to a Joplin bank where Mike cashed the check, giving Copher $750.

This information was reduced to writing, signed by Copher, and turned over to Prosecuting Attorney Elliston.

Elliston, testifying at the 27.26 hearing, explained that although the check was cashed in Jasper County, the alleged sale occurred in Newton County. Deciding there was no basis for prosecution in Jasper County, Elliston forwarded the information to Newton County Prosecuting Attorney Gary Lentz. Elliston added that because of the "Sunshine Law," [14] he felt an obligation to keep the information as a "closed file" and not provide it to the attorneys representing the defendants against whom he had filed charges based on Co-

---

**12.** Findings numbered 14 and 15.

**13.** R_____ was not Neal's counsel on direct appeal, or at the 27.26 hearing.

**14.** Presumably §§ 610.100–.115, RSMo 1978.

pher's information. According to Elliston, he did not tell R_____ that Copher had implicated him, and to Elliston's knowledge, R_____ was unaware of Copher's disclosure.[15]

R_____ testified at the 27.26 hearing, revealing that he learned in February or March, 1980, that Copher had implicated him in "trafficking drugs." R_____ was told of this by a "third·party," who had obtained the information from a "reliable source" in the prosecutor's office. R_____ explained that he was not advised of the specifics of Copher's statement, but only that "it was supposedly something occurred in Newton County." R_____, who was in Florida when the news reached him, contacted attorney John R. Martin, asking him "to check into it."

According to R_____, he received word from Martin a "day or two" later, that "there was nothing to it, no prosecution." R_____ understood from this that neither Elliston nor Lentz "intended to do anything." R_____ related that nothing else "ever came up in regard to this." R_____ testified he never had any discussion about the matter with Lentz or Elliston.

Elliston testified he was certain he never discussed the subject with Martin.

Lentz, also a witness at the 27.26 hearing, testified he learned of Copher's implication of R_____ in a phone call from Elliston. Lentz concluded he could not make a submissible case against R_____ or Mike because there was no way to prove the substance involved was cocaine. According to Lentz, he told Elliston that he (Lentz) was not going to prosecute R_____, and Elliston replied, "Fine." Lentz testified he never discussed the matter with R_____ or Martin. Lentz was

unaware that R_____ knew he (Lentz) had been told of Copher's statement until the 27.26 hearing.

Martin was deceased at the time of the 27.26 hearing.

R_____ was employed by Neal, for a fee of $10,000,[16] to represent Neal in all of the cases pending against him. At the 27.26 hearing, R_____ could not recall whether he was retained before or after learning that Copher had implicated him (R_____). It was clear, however, that R_____ knew of Copher's disclosure—if not its specifics—several months before Neal's trial.[17]

R_____ assigned "the main job of preparing and presenting the defense" of Neal to G_____.

At the 27.26 hearing, R_____ was asked whether he told G_____, prior to Neal's trial, that Copher had made a statement implicating him (R_____) in drug trafficking. R_____ replied, "I don't think so."

G_____ testified at the 27.26 hearing that prior to Neal's trial, he (G_____) had heard rumors that R_____ was a drug user.[18] G_____ explained, however, that he was unaware Copher had told the authorities he had sold cocaine to R_____.

Neal, at the 27.26 hearing, testified that during the period between his trial and his sentencing,[19] he was in the same jail-cell area with Mike, and was told by Mike that there was a chance he (Mike) and R_____ would be indicted "on the cocaine." According to Neal, he asked G_____ about this, and G_____ later confirmed there was "something that Miles Copher had indicated to Mr. R_____."

G_____, however, testified that at no time did Neal tell him Copher had made a

**15.** Evidently, sometime in 1982, more than a year after Neal's trial, both Elliston and R_____ were named as defendants in a "Civil Rights Suit." Elliston testified that on the evening of the day he was served with process, he went to R_____'s house and told R_____ about Copher's statement.

**16.** R_____ recalled the fee was $10,000. Neal testified he originally paid R_____ $15,000, and received $5,200 back the day he was sentenced.

**17.** Trial began October 9, 1980.

**18.** Neal does not contend that R_____'s trial skills were affected by drug use, and the record belies any such inference.

**19.** Sentencing occurred November 13, 1980.

statement to the authorities implicating R_____ in a cocaine transaction. G_____ related that he first learned of Copher's implication of Neal in the alleged cocaine sale after the "civil action had been filed in Federal Court" by Neal.[20]

Copher, testifying at the 27.26 hearing, was asked whether his answers in his written statement of February 15, 1980, were true. He answered, "Yes." He also testified about going to the motel, seeing R_____ hand the check to Mike, taking Mike to the bank to cash the check, and receiving the money. Copher confirmed that the motel where the alleged cocaine sale occurred was in Newton County.

At no time during R_____'s testimony at the 27.26 hearing was he asked whether he in fact had purchased cocaine from Copher, and R_____ did not volunteer anything on the subject. The trial court made no finding of fact in that regard.

Neal's conflict of interest theory, as we understand it, is based on the hypothesis that R_____, because of his implication by Copher in the alleged cocaine sale, was motivated to do "less than he could" in defending Neal. Neal argues that R_____ "seemed scared of making the Prosecutor angry," and as a result, provided ineffective representation of Neal, thereby allowing Neal to be convicted. Neal itemizes several alleged deficiencies, listed *infra*.

In considering point IV, we first note there is no evidence of collusion between R_____ and the prosecution whereby R_____ would present a lame defense for Neal in order to escape prosecution himself. Lentz, Elliston and R_____ denied any such doings, and there is not a scintilla of evidence to the contrary.

The judgment denying Neal's motion to vacate includes these findings:

"10. That there is no evidence of prosecutorial pressure on Petitioner-Movant's counsel, thereby depriving Petitioner-Movant of his Constitutional rights.

28. That there was no conspiracy between counsel for Petitioner-Movan and the Prosecuting Attorney and they did not act in concert by refusing to call material witnesses, or to properly investigate Miles Copher or to file Pre-trial Motions requested by Petitioner-Movant."

■ These findings are not clearly erroneous, thus they are binding on us. Rule 27.26(j); *Charles*, 612 S.W.2d at 411–12[3]. Moreover, any contrary finding would be without evidentiary support.

The absence of collusion, however, does not resolve the issue.

■ In Missouri, one seeking to impeach a witness may ask him whether he has committed a crime, or whether he has admitted committing a crime. *State v. Foster*, 349 S.W.2d 922, 924–25[6–8] (Mo.1961); *State v. Summers*, 506 S.W.2d 67, 73 (Mo. App.1974). Such inquiry is permissible even though the witness has not been convicted of the crime. *State v. Meek*, 584 S.W.2d 168, 170[5] (Mo.App.1979). When the answer sought is pertinent only to the issue of credibility, the inquiry is subject to the general rule that the extent of cross-examination on collateral matters for the purpose of impeachment lies within the discretion of the trial court. *State v. Lynch*, 528 S.W.2d 454, 458[5] (Mo.App.1975). However, abuse of that discretion, which unduly restricts the right of cross-examination as to relevant and material matters, is reversible error. *Summers*, 506 S.W.2d at 73–74.

Here, in his written statement of February 15, 1980, Copher said he had sold cocaine to R_____ in 1979. Then, as now, selling cocaine was a felony. §§ 195.017.-4(1)(d), 195.020, 195.200.1(4) and 556.016.2, RSMo 1978.

It is therefore reasonable to expect that an attorney representing Neal, who knew either that (a) Copher had sold cocaine in Missouri in 1979, or (b) Copher had said he did so, would have asked Copher about it in an effort to impeach his testimony.

**20.** Footnote 15, *supra.*

R_____ recognized that the State's case against Neal rested largely on Copher's credibility. R_____ testified at the 27.26 hearing that one of the strategies ·in defending Neal was to discredit Copher.

R_____, however, did not handle the cross-examination of Copher at Neal's trial; G_____ did. Copher admitted selling marihuana, "dope," and mescaline, but G_____ never asked Copher·about selling cocaine, and Copher never mentioned it.

It is obvious, of course, that if Copher had in truth sold cocaine to R_____ in 1979, R_____ was hardly in a position to suggest that G_____ ask Copher about it. The jury had already heard Copher testify he bought marihuana from Neal. Testimony that he (Copher) had earlier sold cocaine to one of Neal's attorneys, if believed by the jury, could have been devastating to Neal. The jury could have easily viewed R_____'s defense of Neal as an effort by a cocaine user to dupe a jury into freeing a marihuana seller, both standing accused by the same witness. The peril would have been enhanced because Copher's testimony about the cocaine sale (again assuming it were true) would have presumably stood unchallenged before the jury. R_____ could not have ethically denied the accusation, Rule 4, Code of Professional Responsibility, DR 7–102(A)(6), and a denial by R_____ under oath could have run afoul of § 575.040, RSMo 1978.[21]

We are mindful, however, that if R_____ did not buy cocaine from Copher in 1979, and if R_____ did not know of the content of Copher's statement of February 15, 1980, R_____ would not have been aware of this avenue of impeachment.

In attempting to determine how much R_____ knew about Copher's statement, we note that at the 27.26 hearing, R_____ testified he was told only that the statement implicated him (R_____) in "trafficking drugs," based on "something" that had allegedly occurred in Newton County. This in nowise indicates that R_____ knew

Copher had told the authorities that he (Copher) had personally sold cocaine to R_____, or to anyone else. Consequently, if R_____ did not purchase cocaine from Copher, and if R_____ knew nothing other than what he says he was told by the unidentified "third party," he (R_____) would not have known that Copher had admitted making a cocaine sale in 1979. Absent that knowledge, R_____ would have been unaware of this means of impeaching Copher.

■■■ We are thus led to conclude that in order to rule point IV, we need findings by the trial court on these issues:

1. Did R_____, either alone or jointly with others, purchase cocaine from Copher in 1979, as related by Copher in his statement of February 15, 1980, and in his testimony at the 27.26 hearing?

2. If the finding on issue 1 is no, did R_____ know, prior to Neal's trial, that Copher had said in his statement of February 15, 1980, that he (Copher) had sold cocaine to R_____ in 1979?

Neal makes other complaints in point IV about R_____'s services, including failure to call "material witnesses," exposure of Neal's criminal record to the jury, failure to impeach Copher by prior inconsistent statements, neglect to introduce certain grand jury minutes and depositions into evidence, and failure to request a mistrial when a member of the venire asked whether Neal was involved in a particular burglary. Rather than decide point IV piecemeal, we shall lay it aside until we receive the trial court's findings on the issues specified above.

The trial court's denial of relief is affirmed as to all points except IV. The judgment is reversed as to point IV only, and the cause is remanded to the trial court with directions to make the findings herein required. In doing so, the trial court, in its

---

**21.** If Copher's implication of R_____ in the cocaine transaction be true, other ethical considerations are suggested. See Rule 4, EC 1–5, DR 1–102(A)(3), EC 5–1, EC 5–2 and DR 5–101(A). They are not, however, material to the issue before us.

discretion, may reopen the hearing and receive further evidence.

FLANIGAN, P.J., not participating.